# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,
v.
DEANDRE LYNCH,
Defendant and Appellant.

S274942

Third Appellate District
C094174

Sacramento County Superior Court
20FE009532

---

August 1, 2024

Justice Corrigan authored the opinion of the Court, in which Justices Liu, Groban, and Evans concurred.

Justice Kruger filed a concurring and dissenting opinion, in which Justice Jenkins concurred.

Chief Justice Guerrero filed a dissenting opinion.

---

PEOPLE v. LYNCH

S274942

Opinion of the Court by Corrigan, J.

The Sixth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment's due process clause, "provides that those 'accused' of a 'crime' have the right to a trial 'by an impartial jury.' This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt." (*Alleyne v. United States* (2013) 570 U.S. 99, 104 (*Alleyne*), quoting U.S. Const., 6th Amend.; accord, *Apprendi v. New Jersey* (2000) 530 U.S. 466, 476 (*Apprendi*).) In the context of California's determinate sentencing scheme, *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*) held that, "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (*Id.* at p. 281.) "Inhering in that guarantee is an assurance that a guilty verdict will issue only from a unanimous jury." (*Erlinger v. United States* (2024) 602 U.S. ___, ___ [144 S.Ct. 1840, 1849] (*Erlinger*); accord, *Ramos v. Louisiana* (2020) 590 U.S. 83, 90, 92–93 (*Ramos*).)

Effective January 1, 2022, Penal Code[1] section 1170, subdivision (b) (hereafter section 1170(b)) was amended to prohibit imposition of an upper term sentence unless

---

[1] All further undesignated statutory references are to the Penal Code.

aggravating circumstances justify that term and the facts underlying any such circumstance, other than a prior conviction, "have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170(b)(2), as amended by Stats. 2021, ch. 731, § 1.3.) Allegations of prior convictions may be tried by the court alone and proven by certified records of conviction. (*Id.*, subd. (b)(3).) The Courts of Appeal have uniformly held, and the parties here agree, that this amendment applies retroactively to defendants like Lynch whose judgments were not final on direct appeal at the time the statute took effect. We granted review to decide when a remand for resentencing is required under the new law. We hold that a court reviewing a case where the former version of section 1170(b) was employed must apply the *Chapman* standard of review. (*Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).) Accordingly, in a case where the judgment is not yet final, a sentence imposed under former section 1170(b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute. (§ 1170(b)(2), (3).) Throughout this opinion, any discussion of jury findings refers to factual findings made beyond a reasonable doubt. Further, similar to the situation in *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390 (*Gutierrez*), the 2022 amendment to section 1170(b)(1) and (2) altered the scope of the trial court's discretion. As a result, for sentences imposed under the former law the record must clearly indicate that the court would have found an upper term justified had it been aware of

its more limited discretion. We reverse the Court of Appeal judgment, disapprove contrary Court of Appeal holdings, and remand for resentencing.

## I. BACKGROUND

Defendant, Deandre Lynch, is Jasmine Doe's former boyfriend and the father of her child. Over the course of several months, Lynch physically abused Jasmine daily. At trial, Jasmine vaguely described the details of some assaults and testified that she had no recollection of others.

Jasmine's brother, Joseph C., testified about statements Jasmine had made recounting Lynch's abuse. On one occasion, she called Joseph crying and out of breath. She said that Lynch had punched her in the face, thrown her to the ground, and beaten her with a metal rod. A few weeks later, Jasmine called Joseph again and tearfully reported that Lynch had kicked her and hit her with an extension cord. Joseph saw looped and straight-line bruises on her arms, shoulder, and back consistent with a metal rod and an extension cord.

On May 24, 2020, Joseph arrived at Jasmine's home and heard banging and screaming. Going inside, he saw his sister lying on the floor with her hands raised in defense. Lynch stood over her with his arm drawn back as if to hit her. Joseph intervened and took his sister outside.

A deputy sheriff dispatched to investigate saw multiple bruises on Jasmine's body. Jasmine told the deputy that Lynch had hit her with a small wooden table until a leg broke off, then continued to beat her with the detached leg. She also said that he had previously hit her with an extension cord and a metal broom. Jasmine's injuries were consistent with her report. Searching the home, the deputy saw a wooden table with a

missing leg, a power cord, and a broom and mop with metal handles. As time went by, Jasmine became less forthcoming to the deputy about the details of the assaults and less willing to assist in the prosecution.

A jury convicted Lynch of three counts of domestic violence resulting in a traumatic condition. (§ 273.5, subd. (a).) It hung on one count of assault with a deadly weapon against Joseph C. (§ 245, subd. (a)(1).)[2] It acquitted Lynch on a second count of assault with a deadly weapon against Jasmine but convicted him of simple assault (§ 240) as a lesser offense. Following a jury waiver, the court found Lynch had suffered a prior conviction for assault with a firearm (§ 245, subd. (a)(2)) within the meaning of the Three Strikes law, and a prior conviction for domestic violence, which increased the sentencing triad for his current domestic violence convictions (§ 273.5, subd. (f)(1)).

The probation report listed prior felony convictions for assault with a firearm (§ 245, subd. (a)(2)); two counts of obstructing a law enforcement officer (§ 69); two counts of domestic violence (§ 273.5, subd. (a)); unlawful possession for sale of a controlled substance (Health & Saf. Code, § 11378); failure to appear (§ 1320, subd. (b)); unlawful transportation/sale of cannabis (Health & Saf. Code, § 11360, subd. (a)); and unlawful delivery of cocaine (Oregon) (Or. Rev. Stat. § 475.880). It also listed six misdemeanor convictions, including one count of obstructing a peace officer (§ 148, subd. (a)(1)).

---

[2] This count involved testimony by Joseph about a fight during which Lynch allegedly stabbed him.

4

The report also noted potentially applicable aggravating circumstances set out in California Rules of Court, rule 4.421. At the sentencing hearing, defense counsel challenged three of these aggravating circumstances, arguing that Lynch's actions did not rise to the level of a high degree of cruelty, viciousness, or callousness; that the victim was not particularly vulnerable; and that Lynch was not a serious danger to society. Counsel did not object to any of the information about Lynch's criminal history in the certified records or the probation report.

In April 2021, the court ordered a prison sentence of 15 years 4 months, imposing the upper term of five years for the first domestic violence conviction, and consecutive terms of one year four months for the remaining two counts. The total was doubled under the Three Strikes law.[3] The court cited eight circumstances in aggravation to support imposing the upper term sentence for the principal count: (1) the crimes involved a high degree of cruelty, viciousness, and callousness because Lynch had struck the victim with a table leg, an extension cord, and a broomstick (see Cal. Rules of Court, rule 4.421(a)(1)); (2) the victim was particularly vulnerable (*id.*, rule 4.421(a)(3)); (3) Lynch used a weapon when committing the crimes (*id.*, rule 4.421(a)(2)); (4) his conduct and prior record indicate a serious danger to society (*id.*, rule 4.421(b)(1)); (5) his prior convictions are numerous (*id.*, rule 4.421(b)(2)); (6) he had served prior prison terms (*id.*, rule 4.421(b)(3)); (7) he was on parole at the time he committed the crimes (*id.*, rule 4.421(b)(4)); and (8) his prior performance on parole was unsatisfactory (*id.*, rule 4.421(b)(5)). The court found no circumstances in mitigation.

---

[3] The court also imposed but stayed a one-year term for the simple assault. (§ 654.)

Approximately two months after sentencing, Senate Bill No. 567 (2021–2022 Reg. Sess.), amending section 1170(b), was signed into law. On appeal, Lynch argued that he was entitled to reversal of his sentence and a remand because the jury did not find any of the facts on which the court relied to support the upper term sentence.

A divided Court of Appeal affirmed the upper term sentence. The Attorney General conceded that the 2022 amendment to section 1170(b)(1), (2), and (3) applied retroactively to Lynch's pending appeal under *In re Estrada* (1965) 63 Cal.2d 740, 745 (*Estrada*). The majority concluded, however, that reversal was not required. It held that two aggravating circumstances, Lynch's use of a weapon and his prior convictions, were proved in compliance with the Sixth Amendment guarantees and with the statute as amended. As to the remaining aggravating circumstances cited by the trial court, it ruled that the failure to satisfy the current statute was an error of state law, reviewable under the "reasonably probable" standard set out in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). The majority characterized the *Watson* test as asking: "[W]ould any of the facts underlying the . . . improperly found aggravating circumstances have been found true beyond a reasonable doubt if submitted to the jury?" And "excluding any factors we cannot conclude would have been found true in a permissible manner, is there a reasonable probability the trial court would have imposed a more lenient sentence?" Applying that test, the majority found the absence of a jury verdict harmless. Justice Renner, writing in dissent, would have found that Lynch suffered prejudice. He pointed out that the court's statement of support for the upper term mentioned many circumstances unadjudicated by the jury.

Accordingly, it was not clear what sentence the court would have imposed had it not relied on improperly proven circumstances.

Thereafter, several published cases weighed in on the matter. (See, e.g., *People v. Hall* (2023) 97 Cal.App.5th 1084, 1104–1108, review granted Feb. 28, 2024, S283530 (*Hall*); *People v. Ruiz* (2023) 97 Cal.App.5th 1068, 1076–1078, review granted Mar. 12, 2024, S283504; *People v. Falcon* (2023) 92 Cal.App.5th 911, 938–951, review granted Sept. 13, 2023, S281242 (*Falcon*); *People v. Butler* (2023) 89 Cal.App.5th 953, 960, review granted May 31, 2023, S279633 (*Butler*); *People v. Lewis* (2023) 88 Cal.App.5th 1125, 1136–1137, 1142–1143, review granted May 17, 2023, S279147 (*Lewis*); *People v. Ross* (2022) 86 Cal.App.5th 1346, 1354, review granted Mar. 15, 2023, S278266 (*Ross*); *People v. Dunn* (2022) 81 Cal.App.5th 394, 407, review granted Oct. 12, 2022, S275655 (*Dunn*); *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1110–1113 (*Zabelle*); *People v. Wandrey* (2022) 80 Cal.App.5th 962, 981–983 (*Wandrey*); *People v. Lopez* (2022) 78 Cal.App.5th 459, 466, 468 (*Lopez*); *People v. Flores* (2022) 75 Cal.App.5th 495, 500 (*Flores*).) The Courts of Appeal have uniformly concluded that the 2022 statutory amendment applies retroactively. They have also uniformly concluded that defendants sentenced under the old law are not automatically entitled to a remand, and that some type of prejudice inquiry applies. The courts have reached different conclusions about the extent to which the current statute implicates the Sixth Amendment, and how precisely to articulate the prejudice inquiry in this context.[4] We granted review to answer these questions.

---

[4] We discuss the lower court holdings in greater detail below.

## II. DISCUSSION

### A. *California's Determinate Sentencing Law*

We begin with an overview of various changes to California's determinate sentencing law during the last 16 years. Resolving this case will involve distinguishing among three versions of section 1170: the original approach adopted when the Legislature replaced the Indeterminate Sentencing Law with the Determinate Sentencing Law (DSL); the 2007 amendment of section 1170 made in immediate response to *Cunningham*; and the latest amendment in 2022. In 2007, the United States Supreme Court invalidated California's upper term sentencing scheme as violative of the Sixth Amendment. (*Cunningham*, *supra*, 549 U.S. at pp. 274, 288, 293.) The original approach of section 1170(b), which governed Cunningham's sentence, required that, when a statute specified three terms, "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." (Former § 1170(b); Stats. 1977, ch. 165, § 15, p. 648; Stats. 1998, ch. 926, § 1.5, p. 6207; see *Cunningham*, at pp. 277–278.) Thus, the original statute reflected a presumption in favor of the middle term. The accompanying rule of court specified that such circumstances had to be proved by a preponderance of the evidence. (Cal. Rules of Court, former rule 4.420(b).) Under that scheme the trial court, not the jury, determined the facts bearing on aggravation or mitigation employing the lower standard of proof.

However, *Cunningham* held that, with the exception of prior conviction allegations, "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury" and "established beyond a reasonable doubt." (*Cunningham*, *supra*, 549 U.S. at p. 281.) The majority

explained: "As this Court's decisions instruct, the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant. *Apprendi*[, *supra*,] 530 U.S. 466 . . . ; *Ring v. Arizona*[ (2002)] 536 U.S. 584 . . . ; *Blakely v. Washington*[ (2004)] 542 U.S. 296 . . . ; *United States v. Booker*[ (2005)] 543 U.S. 220 . . . . '[T]he relevant "statutory maximum," ' this Court has clarified, 'is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.' *Blakely*, 542 U.S., at 303–304 (emphasis in original)." (*Cunningham*, at pp. 274–275.) In Cunningham's case, "the jury's verdict alone limited the permissible sentence to 12 years. Additional factfinding by the trial judge, however, yielded an upper term sentence of 16 years. The California Court of Appeal affirmed the harsher sentence." (*Id.* at p. 275.) *Cunningham* reversed that disposition "because the four-year elevation based on judicial factfinding denied petitioner his right to a jury trial." (*Ibid*.)

The court observed that, in the wake of its decision, " '[t]he ball . . . lies in [California's] court.' [Citations.] We note that several States have modified their systems in the wake of *Apprendi* and *Blakely* to retain determinate sentencing. They have done so by calling upon the jury — either at trial or in a separate sentencing proceeding — to find any fact necessary to the imposition of an elevated sentence. As earlier noted, California already employs juries in this manner to determine statutory sentencing enhancements. [Citation.] Other States have chosen to permit judges genuinely 'to exercise broad discretion . . . within a statutory range,' which, 'everyone

agrees,' encounters no Sixth Amendment shoal. [Citation.] California may follow the paths taken by its sister States or otherwise alter its system, so long as the State observes Sixth Amendment limitations declared in this Court's decisions." (*Cunningham*, *supra*, 549 U.S. at pp. 293–294, fns. omitted.)

In response to *Cunningham*, the California Legislature amended section 1170 in 2007 to provide that the choice between the lower, middle, and upper terms "shall rest within the sound discretion of the court," with the court "select[ing] the term which, in the court's discretion, best serves the interests of justice" and stating reasons for its decision. (Former § 1170(b), enacted by Stats. 2007, ch. 3, § 2, pp. 6–7.) The amendment gave judges "broad discretion in selecting a term within a statutory range, thereby eliminating the requirement of a judge-found factual finding to impose an upper term. [Citations.] [It] amended section 1170 so that (1) the middle term [was] no longer the presumptive term absent aggravating or mitigating facts found by the trial judge; and (2) a trial judge [had] the discretion to impose an upper, middle or lower term based on reasons he or she states." (*People v. Wilson* (2008) 164 Cal.App.4th 988, 992 (*Wilson*).) By enacting this amendment, the Legislature selected the second option presented by the high court in *Cunningham*. Lynch was sentenced under the 2007 version of the law.

However, as of January 1, 2022, the Legislature again amended section 1170 to provide that the trial court "shall," in its discretion impose a sentence "not to exceed the middle term" (*id.*, subd. (b)(1)) except in the following circumstance: "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of" an upper term sentence, and "the facts

underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170(b)(2); Stats. 2021, ch. 719, § 2; see also §1170.1, subd. (d)(1), (2) [imposing same requirement for enhancements punishable by one of three terms]). Notwithstanding these provisions, the court "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170(b)(3).)[5] At the defendant's request, trial on the aggravating circumstances alleged in the indictment or information "shall be bifurcated from the trial of charges and enhancements" unless "evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law." (*Id.*, subd. (b)(2).)[6] The effect of the 2022 amendment was to embrace *Cunningham*'s first option.

---

[5] This provision is consistent with *Apprendi*, which recognizes an exception to the jury trial right for prior convictions. (*Apprendi, supra*, 530 U.S. at p. 490; see *Almendarez-Torres v. United States* (1998) 523 U.S. 224 (*Almendarez-Torres*).) Section 1170(b)(3) further provides that this exception to the jury trial requirement "does not apply to enhancements imposed on prior convictions." (§ 1170(b)(3).)

[6] California Rules of Court, rule 4.420(b) was amended to reflect these changes. The CALCRIM instructions likewise have been modified to provide guidance on the definitions and required findings for the listed aggravating circumstances. (CALCRIM Nos. 3224–3251.)

### B. Retroactive Application of 2022 Amended Section 1170(b)(1), (2) and (3)

" 'It is well settled that a new statute is presumed to operate prospectively absent an express declaration of retrospectivity or a clear indication that the electorate, or the Legislature, intended otherwise.' [Citations.] The Penal Code provides that '[n]o part of it is retroactive, unless expressly so declared.' (§ 3.)" (*People v. Stamps* (2020) 9 Cal.5th 685, 698–699 (*Stamps*).)

The Legislature did not expressly declare whether the 2022 amendment to section 1170 at issue here applies prospectively or retroactively. The Court of Appeal held that amended section 1170(b)(1), (2), and (3) apply to Lynch's case because the effect of the amendment was ameliorative under the authority of *Estrada, supra,* 63 Cal.2d 740 and subsequent cases, so as to indicate a legislative intent that the amendment be applied retroactively to cases not final on appeal. Other appellate courts have uniformly reached the same conclusion. (See, e.g., *Falcon, supra,* 92 Cal.App.5th at p. 924; *Butler, supra,* 89 Cal.App.5th at p. 959; *Zabelle, supra,* 80 Cal.App.5th at pp. 1108–1109; *Lopez, supra,* 78 Cal.App.5th at p. 465; *People v. Garcia* (2022) 76 Cal.App.5th 887, 902; *Flores, supra,* 75 Cal.App.5th at p. 500.) The Attorney General concedes the point in his briefing here and we accept the concession.

### C. Whether Automatic Reversal or Prejudice Review Is Appropriate

The question remains whether Lynch, and similarly situated appellants, are entitled to an automatic sentencing reversal and remand, or whether the appellate court should review the question under some form of prejudice analysis. "The *Estrada* rule only answers the question of *whether* an amended

statute should be applied retroactively. It does not answer the question of *how* that statute should be applied." (*Stamps, supra,* 9 Cal.5th at p. 700.)

In the past, when applying ameliorative legislative changes retroactively, we have employed a prejudice analysis to determine whether a new trial is required. *People v. Wright* (2006) 40 Cal.4th 81 (*Wright*), for example, held a new law expanding defenses for marijuana possession was properly applied because Wright's case was not final on appeal. (*Id.* at pp. 94–98.) However, we concluded he was not entitled to a new trial because, based on the trial record, the failure to instruct on the new defense was harmless beyond a reasonable doubt under *Chapman, supra,* 386 U.S. 18. (*Wright,* at pp. 98–99.)[7] Likewise, in *People v. Tran* (2022) 13 Cal.5th 1169 (*Tran*), a new provision added elements to a gang enhancement allegation. We again held the statutory changes applied retroactively. (*Id.* at pp. 1206–1207.) We reversed the jury finding as to the gang enhancement and remanded for a retrial on that question. Applying *Chapman,* we concluded reversal and remand were appropriate because we could not conclude beyond a reasonable doubt that the failure to instruct on the new elements was harmless. (*Id.* at p. 1207; accord, *People v. Cooper* (2023) 14 Cal.5th 735, 742, 746 (*Cooper*).) It bears emphasis that, just as in *Wright* and *Tran,* the trial court did not err here. It followed the law in effect at the time of defendant's trial. (See *Gutierrez, supra,* 58 Cal.4th at p. 1390; *Wright, supra,* 40 Cal.4th at p. 104

---

[7] Because we found the *Chapman* standard was met, it was unnecessary to decide whether failure to instruct on the affirmative defense violated the defendant's due process right to present a defense or was instead state law error only. (*Wright, supra,* 40 Cal.4th at p. 98.)

(conc. & dis. opn. of Baxter, J.).) In circumstances such as these the prejudice analysis provides a mechanism for reviewing whether retroactive application of an ameliorative change in the law could have a practical effect on the judgment. If, for example, the record establishes beyond a reasonable doubt that the lack of a jury trial on new elements (*Tran/Cooper*) or a defensive theory (*Wright*) did not affect the outcome, the defendant cannot claim to have suffered prejudice even though he was not tried under the provisions of the new law. In keeping with this approach, and as we discuss in greater detail below, we conclude a form of prejudice review is appropriate here as well.

Arguing against this approach, Lynch and amicus curiae California Public Defender's Association offer four reasons why defendants who were sentenced under the former version of section 1170(b) should be afforded a new sentencing hearing without an individualized assessment of prejudice. Their reasoning is unpersuasive.

Lynch first urges that if *none* of the aggravating facts relied on by the trial court was proved under the current section 1170(b)(2) procedure, the failure to comply with the statute is structural error and requires reversal without an assessment of prejudice.[8] The Supreme Court rejected this same argument in

---

[8] Lynch concedes that this circumstance does not apply to him because the trial court properly considered the fact of his prior convictions that were proved by certified records. (See § 1170(b)(3).) We nonetheless find it appropriate to consider the argument, which presents a question of law arising in numerous cases that have been granted and held for this lead case. Our guidance is therefore warranted. (Cf. *In re William M.* (1970)

*Washington v. Recuenco* (2006) 548 U.S. 212 (*Recuenco*). There, the court held that the failure to submit a sentencing factor to the jury, as required under *Blakely v. Washington, supra*, 542 U.S. 296 (*Blakely*), was not structural. It reasoned that, under *Apprendi, supra*, 530 U.S. 466, "elements and sentencing factors must be treated the same for Sixth Amendment purposes." (*Recuenco*, at p. 220.) That is to say that, absent a waiver, sentencing factors must be proven beyond a reasonable doubt to the jury. However, "an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." (*Neder v. United States* (1999) 527 U.S. 1, 9 (*Neder*).) The omission is not prejudicial if the reviewing court concludes beyond a reasonable doubt that "a rational jury would have found the defendant guilty" upon proper instruction. (*Id.* at p. 18.) The court in *Recuenco* rejected attempts to characterize the error as "the equivalent of a directed verdict of guilt" (*Recuenco*, at p. 221), or the complete absence of a jury finding under *Sullivan v. Louisiana* (1993) 508 U.S. 257 (*Recuenco*, at p. 222, fn. 4; accord, *People v. French* (2008) 43 Cal.4th 36, 52 & fn. 8 (*French*)). The same logic applies where multiple elements are omitted, so long as the omission does not vitiate all of the jury's findings. (*People v. Merritt* (2017) 2 Cal.5th 819, 827–831 (*Merritt*).) Here, Lynch received a jury trial on the elements of the substantive offenses. The lack of a jury trial on aggravating facts therefore did not amount to a total depravation of a jury trial, nor did it vitiate all of the jury's

---

3 Cal.3d 16, 23 [court will decide an issue despite mootness when it presents "an issue of broad public interest that is likely to recur"].)

findings. The prejudice analysis here is triggered by a retroactive application of an amended state statute. Because omission of the jury trial right with regard to elements of an offense or enhancement is not automatically grounds for reversal, the same analysis applies when assessing the omission involved here.

Next, Lynch contends that failure to submit aggravating facts to the jury as now required by section 1170(b)(2) results in an "unauthorized sentence" that is not amenable to a prejudice analysis. Again the argument fails. The unauthorized sentence rule is an exception to the waiver doctrine. It permits a challenge to an unauthorized sentence on appeal even if the defendant failed to object below. (*In re G.C.* (2020) 8 Cal.5th 1119, 1129.) There is no issue of forfeiture or waiver here. The new statute went into effect after Lynch's trial and sentencing. The sentence was authorized when it was imposed. It continues to be permissible under the current statute so long as the aggravating facts are either stipulated to by the defendant or found true by a jury beyond a reasonable doubt. Lynch is pursuing a legitimately filed appeal with regard to his sentence and, indeed, will receive the remand remedy he is seeking. His reliance on precedent governing unauthorized sentences is misplaced.[9] We disapprove language to the contrary in *People v. Falcon, supra*, 92 Cal.App.5th 911, 942–943.

---

[9] Lynch cites *In re Birdwell* (1996) 50 Cal.App.4th 926, but that case is distinguishable. It involved the jury's failure to designate the degree of murder as required under section 1157, an omission different in kind from that presented here. Moreover, in finding noncompliance with section 1157, the *Birdwell* court relied heavily on *People v. McDonald* (1984)

Lynch argues that a prejudice analysis is inappropriate here because he was not on notice that he would be required to defend against the uncharged aggravating circumstances, in violation of his right to due process.[10] According to amicus curiae: "[n]otice is necessary to allow defense counsel to effectively advise his client of his or her maximum permissible sentence, to assess the risk of exercising their Sixth Amendment right to a jury trial, and to decide how to present their case in a way that gives them a reasonable opportunity to be heard." Lynch and amicus curiae rely on cases holding that due process is violated and reversal required when the prosecution fails to specifically plead an offense or sentencing enhancement. (See, e.g., *Presnell v. Georgia* (1978) 439 U.S. 14, 14–17 (*per curiam*) [defendants who were charged with and convicted of kidnapping with bodily injury (sodomy) could not be deemed to have committed kidnapping with bodily injury (forcible rape) for first time on appeal]; *Cole v. Arkansas* (1948) 333 U.S. 196, 197–202 [defendants who were charged with and convicted of unlawful assemblage could not be deemed to have committed the separate crime of interfering with a lawful vocation by the use of force or violence for first time on appeal]; *People v. Mancebo* (2002) 27 Cal.4th 735, 742–752 (*Mancebo*) [defendant could not be

---

37 Cal.3d 351. (*Birdwell*, at pp. 928–930.) We subsequently disapproved *McDonald* on this point when the charge involves first degree felony murder. (*People v. Mendoza* (2000) 23 Cal.4th 896, 908–924.)

[10] A similar argument was made in *Recuenco*. (*Recuenco*, *supra*, 548 U.S. at p. 220, fn. 3.) The defendant there had argued that *Neder* did not apply because this was a "case of charging error, rather than of judicial factfinding." (*Ibid*.) The court declined to address the claim, noting that "the Supreme Court of Washington treated the error as one of the latter type." (*Ibid*.)

sentenced under the One Strike law for sex crimes against multiple victims when that circumstance was not alleged in the accusatory pleading]; *People v. Lohbauer* (1981) 29 Cal.3d 364, 368–373 [defendant charged with residential burglary could not be convicted of unauthorized entry, a nonincluded lesser offense]; *People v. Hernandez* (1988) 46 Cal.3d 194, 204–211 [defendant's sentence could not be enhanced for kidnapping for purposes of rape when that enhancement was not pled and proved].) *Mancebo* observed that the defendant "has a cognizable due process right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes." (*Mancebo*, at p. 747.) When a statute includes specific pleading and proof requirements, "the People's failure to include a multiple-victim-circumstance allegation must be deemed a discretionary charging decision" which "restrict[s] the trial court to this application." (*Id.* at p. 749; accord, *In re Vaquera* (2024) 15 Cal.5th 706, 721–724.)

Because Lynch was tried and sentenced under the 2007 version of section 1170, this case does not directly present issues of pleading and notice. Accordingly, it is not necessary for us to decide exactly what the statute and the federal Constitution demand in this context. But to the extent pleading and notice issues bear on whether a prejudice analysis is appropriate, we find the situation here to be different from those in the cited cases, rendering them distinguishable.

Each of the substantive offenses of which Lynch was convicted was charged in the information. The Penal Code gave notice of the applicable sentencing range for each offense. The statutory structure, case law, and California Rules of Court set out the contours of the hearing process. The probation report and the People's statement in aggravation advised Lynch of all

18

the aggravating circumstances that the court could rely upon to impose the upper sentence. All the aggravating circumstances actually relied on by the court have long been set out in the Rules of Court. (Cal. Rules of Court, rule 4.421.) Parties regularly discuss their presence or absence during plea negotiations and consider them in preparation for a sentencing hearing. In short, Lynch had notice of potentially aggravating circumstances, had the opportunity to contest them at the sentencing hearing, and actually did contest three of the factors. Moreover, because the previous sentencing structure did not require that aggravating circumstances be set out in the charging document, the People's failure to plead and prove them cannot be "deemed a discretionary charging decision." (*Mancebo*, *supra*, 27 Cal.4th at p. 749.)

*People v. Sandoval* (2007) 41 Cal.4th 825 (*Sandoval*) is instructive. There, applying the high court's holding in *Recuenco*, we concluded that the absence of a jury trial on aggravating circumstances used to impose the upper term was amenable to prejudice review notwithstanding many of the same arguments Lynch raises here. (*Id.* at pp. 838–840.) We applied a prejudice analysis in *Sandoval*. In doing so we emphasized, however, that the court must "take into account the differences between the nature of the errors at issue in the present case and in a case in which the trial court fails to instruct the jury on an element of the crime but where the parties were aware during trial that the element was at issue. In a case such as the present one, the reviewing court cannot necessarily assume that the record reflects all of the evidence that would have been presented had aggravating circumstances been submitted to the jury" because those circumstances "were not part of the charge and were not directly at issue in the

trial. . . . Defendant thus did not necessarily have reason — or the opportunity — during trial to challenge the evidence supporting these aggravating circumstances unless such a challenge also would have tended to undermine proof of an element of an alleged offense." (*Id.* at p. 839.) We further observed that "although defendant did have an incentive and opportunity at the sentencing hearing to contest any aggravating circumstances mentioned in the probation report or in the prosecutor's statement in aggravation, that incentive and opportunity were not necessarily the same as they would have been had the aggravating circumstances been tried to a jury." (*Ibid.*) This is so because the standard of proof at the sentencing hearing was lower and the trial court had broad discretion in imposing a sentence. We recognized that "[c]ounsel's strategy might have been different had the aggravating circumstances been tried under a beyond-a-reasonable-doubt standard of proof to a trier of fact that was responsible only for determining whether such circumstances were proved (and not for making the ultimate sentencing decision)." (*Id.* at p. 840.)

The factors identified in *Sandoval* may make it more likely that the absence of jury factfinding on one or more aggravating facts was prejudicial. But that reality does not justify a rule of per se reversal. (*People v. Cahill* (1993) 5 Cal.4th 478, 503.) Our application of a harmless error review in *Sandoval* demonstrates that such review is possible, and the omission is not structural. (*Sandoval, supra,* 41 Cal.4th at pp. 840–843; cf. *People v. Anderson* (2020) 9 Cal.5th 946, 963–964 [applying harmless error review to an unpled firearm enhancement].)

Finally, amicus curiae argues that using a prejudice analysis to deny individual defendants a remand contravenes the Legislature's unarticulated intent to have the new statute

apply retroactively to all persons whose sentences are not final on direct appeal. In amending section 1170(b)(1) through (3), the Legislature expressed its intent to codify the Supreme Court's holding in *Cunningham*. The bill's author explained that the 2007 legislative amendment to section 1170 was a " 'temporary' " measure in response to *Cunningham*, and that the statute's sunset provision had been extended multiple times. (Assem. Floor Analysis, 3d reading analysis of Sen. Bill No. 567 (2021–2022 Reg. Sess.) as amended Sept. 3, 2021, p. 2.) The author urged that " '[i]t is time for us to revisit the determinate sentencing structure [that has been] in place for the last 11 years to actively decide what of it is desirable, and serves the general welfare and the interest of justice.' " (*Ibid*.) According to the author, " '[i]t is important, proper, and constitutionally conforming to change the law to ensure that aggravating facts are presented to the jury before a judge imposes a maximum sentence as decided in *Cunningham v. California*.' " (*Ibid*.)

Yet neither the text of the statute nor the legislative history addressed the retroactive application of the amendment, and they say nothing about the appropriate standard of review. While we have accepted the Attorney General's concession that the 2022 statutory amendment applies retroactively under *Estrada* to cases still pending on appeal at the time of its enactment, that point of agreement does not dictate how it should apply in a particular case, or the review standard under which the question is to be addressed. Our precedent demonstrates that not every defendant in this posture is automatically entitled to a remand. (*Cooper, supra,* 14 Cal.5th at pp. 742–743; *Tran, supra,* 13 Cal.5th at p. 1207; *Wright, supra,* 40 Cal.4th at pp. 98–99.)

As we have done before, we emphasize that determining legislative intent with respect to retroactive application of a statute "can be a difficult, divisive, and time-consuming one for courts, which have to discern intent from sometimes opaque sources." (*People v. Prudholme* (2023) 14 Cal.5th 961, 979.) Given these " 'interpretative difficulties' " and the " 'sheer volume of nonfinal criminal cases in this state,' " courts will greatly benefit from the Legislature's specificity on these matters. (*Id.* at p. 980, quoting *People v. Flores* (2022) 77 Cal.App.5th 420, 452–453.) "We urge the Legislature . . . to consider the retroactive application of new laws and to regularly express their intent regarding if and how they should be applied retroactively." (*Prudholme*, at p. 980.)

### D. Test for Assessing Prejudice

Having determined that Lynch is not automatically entitled to a remand for resentencing under current section 1170(b)(1), (2) and (3), we turn to the appropriate test for assessing prejudice in this circumstance. *Watson* and *Chapman* articulate two different tests for determining prejudice. Which test is appropriate depends on the nature of the error and the right impinged upon. We apply the *Watson* test to errors of state law that do not rise to the level of federal constitutional error. (*People v. Hendrix* (2022) 13 Cal.5th 933, 942; *Watson*, *supra*, 46 Cal.2d at p. 836.) Under the *Watson* test, an error is harmless unless it is "reasonably probable" the outcome would have been different in the absence of the error. (*Watson*, at p. 836.) " 'In contrast, we evaluate the harmlessness of violations of the federal Constitution under the standard set forth in *Chapman*[, *supra*,] 386 U.S. 18.' [Citation.] This 'stricter' standard of review requires reversal unless the error is 'harmless beyond a reasonable doubt.' " (*Hendrix*, at p. 942.)

The failure to afford a jury trial on every element of a criminal offense is subject to *Chapman* review. (*Ibid.*; *Merritt, supra,* 2 Cal.5th at p. 824; *Neder, supra,* 527 U.S. at p. 10.) This is so because the federal Constitution requires "criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." (*United States v. Gaudin* (1995) 515 U.S. 506, 510.)

The plain language of section 1170(b)'s current version now requires that, excepting prior convictions and in the absence of a waiver or stipulation, aggravating facts relied upon to justify an upper term must be resolved by the jury beyond a reasonable doubt. What we must decide is the extent to which this right is tethered to the Sixth Amendment or is simply a state law entitlement. Resolution of that question dictates the appropriate standard of review. Although the question has constitutional implications, it is primarily one of statutory interpretation and legislative intent. It is up to the Legislature to define what facts are necessary to impose an upper term sentence. (Cf. *Patterson v. New York* (1977) 432 U.S. 197, 211, fn. 12.) Relatedly, it is squarely within the Legislature's purview to decide how to remedy the constitutional violation identified in *Cunningham, supra,* 549 U.S. 270. (See *id.* at pp. 293–294; cf. *United States v. Booker, supra,* 543 U.S. at p. 246 ["We answer the remedial question by looking to legislative intent"].) Accordingly, in this context, what the Sixth Amendment requires is necessarily informed by what the state statutory scheme requires. "[T]he relevant inquiry is one not of form, but of effect . . . ." (*Apprendi, supra,* 530 U.S. at p. 494.)

The majority of appellate courts to consider this question have used both federal and state standards to address different

23

aspects of the analysis. They have held that omission of a jury trial is harmless so long as a reviewing court, applying *Chapman*, can conclude beyond a reasonable doubt that *at least one* aggravating fact would have been found true by the jury. (*Falcon, supra*, 92 Cal.App.5th at pp. 938–939; *Butler, supra*, 89 Cal.App.5th at pp. 959–960; *Lewis, supra*, 88 Cal.App.5th at p. 1137; *Ross, supra*, 86 Cal.App.5th at pp. 1353–1355; *Dunn, supra*, 81 Cal.App.5th at pp. 408–410; *Zabelle, supra*, 80 Cal.App.5th at pp. 1110–1113; *Lopez, supra*, 78 Cal.App.5th at p. 467, fn. 11; *Flores, supra*, 75 Cal.App.5th at p. 500.)[11] Those opinions rely on *People v. Black* (2007) 41 Cal.4th 799 (*Black II*) and *Sandoval, supra*, 41 Cal.4th 825, which were decided before the 2022 amendment to section 1170.[12] Courts relying on *Black II* and *Sandoval* reason that, so long as a single aggravating fact was either proved in compliance with the

---

[11]   *Lopez, Ross*, and *Butler* refer to finding "all" aggravating facts upon which the trial court relied to impose the upper term harmless beyond a reasonable doubt. (*Butler, supra*, 89 Cal.App.5th at p. 960; *Ross, supra*, 86 Cal.App.5th at p. 1354; *Lopez, supra*, 78 Cal.App.5th at p. 467, fn. 11.) But those cases go on to apply a *Watson* harmless error standard if the *Chapman* standard is not satisfied. This demonstrates, in effect, that those opinions deem the Sixth Amendment error harmless by the finding of a single aggravating fact. Were it otherwise, the courts would have reversed if *Chapman* was not satisfied as to all facts, and would have had no reason to resort to a second level prejudice inquiry. (See *Falcon, supra*, 92 Cal.App.5th at p. 939.)

[12]   *Black II* was decided on remand from the high court following its decision in *Cunningham*. (*Black v. California* (2007) 549 U.S. 1190, vacating and remanding *People v. Black* (2005) 35 Cal.4th 1238 (*Black I*).) *Sandoval* was granted review after *Cunningham* was decided and was filed as a companion case to *Black II*.

current statute, or would have been found true by the jury applying the *Chapman* standard, the trial court's reliance on *other* facts not proved in compliance with the statute is state error only. (*Falcon*, at pp. 938–939; *Lewis*, at p. 1137; *Ross*, at pp. 1353–1354; *Dunn*, at pp. 408–410; *Zabelle*, at pp. 1111–1112.) Applying the less stringent *Watson* standard, they have gone on to affirm the judgment if they can conclude, to a reasonable probability, that the *remaining* facts would have been found true by the jury; or alternatively, that the trial court would have imposed the same sentence without relying on those facts. (*Butler*, at pp. 961–962; *Ross*, at pp. 1353–1355; *Dunn*, at pp. 408–410; *Zabelle*, at p. 1112; *Lopez*, at p. 467 & fn. 11.) Our dissenting colleagues likewise adopt this approach. (Conc. & dis. opn. of Kruger, J., *post*, at pp. 8–10, 15–16; dis. opn. of Guerrero, C. J., *post*, at pp. 2–4, 7–9, 14–19, 31–32, 35.)

We find this reliance on *Black II* and *Sandoval* misplaced, and we reject the secondary reliance on the *Watson* standard to assess prejudice from the denial of a jury trial on aggravating facts, other than prior convictions, used to justify an upper term sentence. The premise underlying the appellate decisions and our colleagues' separate opinions is that the current statute before us operates in the same manner as the original version of section 1170 that *Cunningham* invalidated. That argument fails at the threshold. The current version of 1170 is not the same as the original pre-*Cunningham* version.

The 2022 amendment of section 1170(b)(1) and (2) has overtaken the viability of *Black II* and *Sandoval* on this issue. As we explain below, under the current statute the facts supporting *every* aggravating circumstance upon which the trial court relies to "justify" imposition of the upper term must be properly proven as the statute requires. (§ 1170(b)(2).) The

current statute specifically empowers the court to choose an upper term only if the facts supporting each aggravating circumstance on which it relies have been resolved by the jury or otherwise established as the statute allows. In other words, unlike the original statute at issue in *Black II*, the defendant is no longer "eligible" for the upper term simply because an aggravating fact exists. Instead, the defendant may be properly sentenced to an upper term only if the jury finds facts that, in the trial court's view, "justify" an upper term sentence. The 2022 amendment of section 1170(b)(1) and (2) effectively codifies the holding in *Cunningham* and goes on to adopt the first option it presented. Excluding properly proven prior convictions or a defense stipulation, a jury finding is now required for all facts actually relied on to impose an upper term. (See *Cunningham, supra*, 549 U.S. at pp. 281, 288–289.)

### *i.* Black II *and* Sandoval

The original version of section 1170 at issue in *Black II* provided that "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." (Pen. Code, former § 1170, subd. (b).) Considering Black's case on a Supreme Court remand after *Cunningham*, we explained that "the constitutional requirement of a jury trial and proof beyond a reasonable doubt applies only to a fact that is 'legally essential to the punishment' [citation], that is, to 'any fact that exposes a defendant to a greater potential sentence' than is authorized by the jury's verdict alone [citation]." (*Black II, supra*, 41 Cal.4th at p. 812.) "Accordingly, so long as a defendant is *eligible* for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal

Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury." (*Id*. at p. 813.) Applying these principles to the original section 1170(b), *Black II* reasoned that "the existence of a single aggravating circumstance [was] legally sufficient to make the defendant eligible for the upper term. [Citation.] Therefore, if one aggravating circumstance [was] established in accordance with the constitutional requirements set forth in *Blakely*, the defendant [was] not 'legally entitled' to the middle term sentence, and the upper term sentence [was] the 'statutory maximum.'" (*Black II*, at p. 813.) Under this interpretation of the former statute, "aggravating circumstances serve[d] two analytically distinct functions in California's . . . determinate sentencing scheme. One function [was] to raise the maximum permissible sentence from the middle term to the upper term. The other function [was] to serve as a consideration in the trial court's exercise of its discretion in selecting the appropriate term from among those authorized for the defendant's offense. Although the DSL does not distinguish between these two functions, in light of *Cunningham* it is now clear that we must view the federal Constitution as treating them differently. Federal constitutional principles provide a criminal defendant the right to a jury trial and require the prosecution to prove its case beyond a reasonable doubt as to factual determinations (other than prior convictions) that serve the first [eligibility] function, but leave the trial court free to make factual determinations that serve the second [discretionary] function." (*Id*. at pp. 815–816.)

*Black II* concluded that there is no *error* under the Sixth Amendment so long as one or more aggravating circumstances "has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions." (*Black II*, *supra*, 41 Cal.4th at p. 816.) *Sandoval* considered the related question of how to assess prejudice when *none* of the aggravating circumstances was proved in compliance with the federal Constitution's jury trial guarantee. Applying *Black II*'s logic, *Sandoval* held that "if a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the Sixth Amendment error properly may be found harmless." (*Sandoval*, *supra*, 41 Cal.4th at p. 839.)

As these holdings make clear, the original, pre-*Cunningham* scheme created a presumption in favor of a middle term. Imposition of an upper or lower term sentence was off limits unless the court, acting as a factfinder, concluded that an aggravating or mitigating factor permitted a deviation from the middle term. Such a finding made the defendant "eligible" for the upper or lower term. Once eligibility was established the court had the authority to consider any and all facts it found to select an appropriate sentence. Importantly, *Black II* and *Sandoval* had no occasion to consider the statutory framework currently before us. Indeed, by the time those cases were decided, the Legislature had amended section 1170(b) in 2007 to eliminate the middle term presumption and instead give the trial court authority to select among any of the three terms as a matter of discretion and without any judicial factfinding. (*Sandoval*, *supra*, 41 Cal.4th at p. 845; *Wilson*, *supra*, 164

Cal.App.4th at p. 992.) This post-*Cunningham* change effectively eliminated the requirement of a jury trial which would otherwise have been required under the Sixth Amendment. (*Cunningham*, *supra*, 549 U.S. at p. 294.)

*ii. The Text of Current Section 1170(b)*

The 2022 version of section 1170(b) functions differently than the pre-*Cunningham* statute analyzed in *Black II* and *Sandoval*. Paragraph (1) now provides that "the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (§ 1170(b)(1).) Paragraph (2) provides that "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id*., subd. (b)(2).) Under the current statute the middle term is the maximum term that can be imposed unless additional factual determinations are made. It is the requirement of additional factfinding that brings the Sixth Amendment into play. (*Cunningham*, *supra*, 549 U.S. at pp. 288–289, 292–293.) As the Court clarified in *Blakely*, *supra*, 542 U.S. at page 304, the maximum available sentence is that available "*without* any additional findings." An upper term sentence may be imposed "only" when circumstances in aggravation "justify" that term, and "only" when the facts underlying "those" justifying circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt at a jury or court trial. By referring to aggravating circumstances "that justify the imposition of" an upper term

sentence (§ 1170(b)(2)), the statute contemplates *all* of the aggravating circumstances that the court actually relies on to justify the sentence, not some subset of those circumstances. (Cf. *Hudec v. Superior Court* (2015) 60 Cal.4th 815, 826.) It then specifies that the facts underlying "*those* circumstances," i.e., the same circumstances the trial court relies on to "justify the imposition of" an upper term sentence, must be proven as the statute requires. (§ 1170(b)(2), italics added.)

The current statute does not follow the blueprint provided in *Black II*. It does not speak in terms of a single aggravating factor making the defendant "eligible" for an upper term sentence. (*Black II*, *supra*, 41 Cal.4th at p. 813.) Nor does it preserve the two-tiered approach discussed in *Black II* (*id*. at p. 816) authorizing the trial court to make factual determinations as to aggravating facts (other than prior convictions) to justify an upper term sentence. Absent stipulation or waiver, that factfinding role now resides solely with the jury. Under the current statute, if an aggravating circumstance does not rest on properly proven facts, the circumstance cannot be relied upon when the court exercises its discretion to justify an upper term sentence.

The current statute tracks fairly precisely the test that *Cunningham* articulated to safeguard the Sixth Amendment jury trial guarantee: "any fact that *exposes* a defendant to a greater *potential* sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (*Cunningham*, *supra*, 549 U.S.

at p. 281, italics added.)[13]  Under the current statute, the aggravating facts that would "justify" an upper term sentence (§ 1170, subd. (b)(2)) are the same facts that "expose" the defendant to imposition of that sentence in the trial court's discretion. (*Cunningham*, at p. 281.)  Stated another way, under the current statute the aggravating facts used to "justify" an upper term sentence are "necessary to [its] imposition," (*id.* at p. 294) and effectively function like elements of a crime (*Recuenco*, *supra*, 548 U.S. at p. 220).

A prejudice inquiry under *Watson* is inadequate to assess the effect of a failure to honor the Sixth Amendment's jury trial right.  The trial court's substitution of its own factfinding for that of a jury, and its application of a lower standard of proof, are not mere state statutory errors.  They are errors that run counter to the high court's interpretation of the federal constitution.  Neither are they mere errors affecting the court's exercise of discretion.[14]  This is true even if the court might have imposed the same sentence based on fewer aggravating circumstances than those it cites on the record.  When the trial court *actually relies* on improperly proven aggravating facts to "justify" an upper term sentence, a Sixth Amendment violation occurs and *Chapman* must be satisfied.  That is to say the

---

[13]  Notably, *Cunningham* nowhere uses the words "eligible" or "eligibility."  Those concepts were introduced by *Black II* and *Sandoval*. (*Black II, supra*, 41 Cal.4th at pp. 806, 812–813, 820; *Sandoval*, *supra*, 41 Cal.4th at pp. 832, 836, 839.)

[14]  Compare with *People v. Price* (1991) 1 Cal.4th 324, 492 ("When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper").

reviewing court must be able to conclude beyond a reasonable doubt that the jury would have found the unproven aggravating facts to be true had it been properly instructed. This prejudice inquiry does not allow us to uphold the trial court's imposition of an upper term sentence based on some subset of aggravating facts. As *Cunningham* aptly put it: "Asking whether a defendant's basic jury-trial right is preserved, though some facts essential to punishment are reserved for determination by the judge, we have said, is the *very* inquiry *Apprendi*'s 'bright-line rule' was designed to exclude." (*Cunningham*, *supra*, 549 U.S. at p. 291.) Under this circumstance, "[i]t is no answer to say that the defendant could have received the same sentence with or without that fact." (*Alleyne*, *supra*, 570 U.S. at p. 115.)

The high court's recent decision in *Erlinger*, *supra*, 602 U.S. ___ [144 S.Ct. 1840] confirms this view. There the court interpreted the scope of the prior conviction exception recognized in *Almendarez-Torres*, *supra*, 523 U.S. 224. It rejected the argument that the exception "permits a judge to find perhaps any fact related to a defendant's past offenses, including whether he committed them on different occasions" within the meaning of the Armed Career Criminal Act. (*Erlinger*, at p. ___ [144 S.Ct. at p. 1853].) Instead, "a judge may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.'" (*Id.* at p. ___ [144 S.Ct. at p. 1854], quoting *Mathis v. United States* (2016) 579 U.S. 500, 511–512.) In so concluding, the court reaffirmed *Apprendi*'s basic rationale in the face of arguments by the dissent and amicus curiae that, historically, "[w]hen exercising their sentencing authority, judges were also presumed to have the power to find and consider nearly any fact deemed relevant to the penalty."

(*Erlinger*, at p. ___ [144 S.Ct. at p. 1876] (dis. opn. of Jackson, J.); see also *id*. at p. ___ [144 S.Ct. at pp. 1856–1857] [summarizing amicus curiae's argument that "the Fifth and Sixth Amendments' original meaning and 'deep' common-law traditions authorize judges at sentencing to find all manner of facts about an offender's past crimes"].)  The court emphasized that, while the government has flexibility to experiment with sentencing practices, such experiments "must remain within the Fifth and Sixth Amendments' guardrails."  (*Id*. at p. ___ [144 S.Ct. at p. 1850].)  In the face of "a variety of . . . recent sentencing innovations" (*id*. at p. ___ [144 S.Ct. at p. 1851]), the court has "come to the same conclusion in one decision after another" (*id*. at p. ___ [*id*. at p. 1857]). "Virtually 'any fact' " that increases "a defendant's exposure to punishment . . . must 'be submitted to a jury' and found unanimously and beyond a reasonable doubt." (144 S.Ct. at p. ___ [*Id*. at p. 1851].)

Our Legislature's most recent amendment to section 1170(b) closely follows those teachings.  But the separate opinions here do not.  The dissents take issue with our interpretation of both the high court's precedent and the current version of section 1170(b).  In doing so, they embrace the declarations in *Black II* and *Sandoval* applying the high court's precedent to a different version of the DSL that was found unconstitutional in *Cunningham*.  Respectfully, we find that analysis unpersuasive.

The majority and dissents begin from the same premise: that the Sixth Amendment jury trial right is triggered by section 1170(b)'s substantive requirements governing imposition of an upper term sentence. (Conc. & dis. opn. of Kruger, J., *post*, at pp. 9–13; dis. opn. of Guerrero, C. J., *post*, at pp. 8, 14.)  But we part ways in our interpretation of what the current statute

33

requires. The dissents reason that, under section 1170(b)'s current provisions, only one aggravating circumstance is legally required to make a defendant eligible for an upper term sentence, and therefore, only one aggravating circumstance must be proved in compliance with the Sixth Amendment. (Conc. & dis. opn. of Kruger, J., *post*, at pp. 7, 9–10, 12, 15; dis. opn. of Guerrero, C. J., *post*, at pp. 2, 8, 17, citing *Black II*, *supra*, 41 Cal.4th at p. 813 and *People v. Osband* (1996) 13 Cal.4th 622, 728 (*Osband*).) Thus, they reason, additional judicial factfinding beyond the first aggravator falls squarely with in the trial court's broad discretion to select a term within the permissible range. (Conc. & dis. opn. of Kruger, J., *post*, at pp. 2, 4–5, 14; dis. opn. of Guerrero, C. J., *post*, at pp. 3, 6–7, 9–10, 13, fn. 4, 17, 19–21 & fn. 6.) Our dissenting colleagues do not dispute our reading of the statute to require a jury trial as to *all* aggravating circumstances, other than prior convictions, used to justify an upper term sentence. But they reason that this is a matter of state procedure, rather than one of constitutional substance. (Conc. & dis. opn. of Kruger, J., *post*, at pp. 1–2, 8, 11, 15; dis. opn. of Guerrero, C. J., *post*, at pp. 12–14, 21, 24.)

The reliance on *Black II* falters upon examination of the material differences between the original section 1170(b) and the current version. The original statute set forth a single requirement to depart from the middle term: that "there are circumstances in aggravation or mitigation of the crime." (Former § 1170(b); Stats. 1977, ch. 165, § 15, p. 648.) In a separate discussion, the statute listed sources of information that the court, as factfinder, could rely on "[i]n determining whether there are circumstances that justify imposition of the

upper or lower term." (*Ibid.*)[15] The accompanying rule of court provided that "[t]he middle term must be selected unless imposition of the upper or lower term is justified by circumstances in aggravation or mitigation." (Cal. Rules of Court, former rule 4.420(a).) Based on this statutory structure, *Black II* reasoned that "the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term" (41 Cal.4th at p. 813) and "aggravating circumstances serve two analytically distinct functions" (*id.* at p. 815), namely to raise the maximum permissible term and to serve as a consideration in the trial court's exercise of discretion (*id.* at pp. 815–816, citing former § 1170(b) and *Osband, supra,* 13 Cal.4th at p. 728).

The current statute, by contrast, eliminates any purported distinction between eligibility and justification with respect to the finding of aggravating facts by: (1) deleting the stand-alone reference to aggravating circumstances; (2) elevating the word "justify" from an ancillary reference in the statute's list of permitted evidence to a substantive requirement; (3) authorizing the court to impose an upper term sentence "only" when the "circumstances in aggravation . . . justify the imposition" of that term; and (4) eliminating the court's factfinding authority as to aggravating facts (other than prior

---

[15] Although the statute has undergone numerous revisions over the decades, the quoted language remained unchanged at the time of Cunningham's sentence in 2003 and when the high court decided *Cunningham* in 2007. (Stats. 1998, ch. 926, § 1.5, pp. 6207–6208; Stats. 2004, ch. 747, § 1, pp. 5808–5809.)

convictions). (§ 1170(b).)[16] Examination of these differences undermines our colleagues' assertion that the current statute is materially indistinguishable from the original statute considered in *Black II* and *Cunningham*. (Conc. & dis. opn. of Kruger, J., *post*, at pp. 9–11; dis. opn. of Guerrero, C. J., *post*, at pp. 19–20.) Nor are these changes merely procedural in nature. (Dis. opn. of Guerrero, C. J., *post*, at pp. 12–14.) They convey substantive sentencing requirements. These statutory differences reanimate and give force to the defense argument, rejected in *Black II*, that the existence of a single aggravating circumstance does not satisfy *Apprendi*'s jury trial requirement because the trial court must justify imposition of that sentence. (*Black II*, *supra*, 41 Cal.4th at p. 814.) In so concluding, we heed the high court's caution not to ignore the constitutional significance of the statutory scheme our Legislature has adopted. (*Cunningham*, *supra*, 549 U.S. at pp. 289–293 & fn. 16.)

It is true that nothing in section 1170(b)(2) prohibits the court from imposing an upper term sentence based on a single, properly proven aggravating circumstance *if*, in the court's discretion, *that circumstance alone justifies* a sentence exceeding the middle term. We do not read the current statute's

---

[16] California Rules of Court, former rule 4.420(b) is distinct from current section 1170(b) as well. The former rule provided that an upper term sentence is "justified only if, after a consideration of all the relevant facts, the circumstances in aggravation outweigh the circumstances in mitigation" (Cal. Rules of Court, former rule 4.420(b)), rather than "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances" are properly proven (§ 1170(b)(2)).

reference to "circumstances" in the plural as requiring a different conclusion. (§ 1170(b)(2); see § 7, subd. (a) [as used in the Penal Code, "[w]ords used in the singular number includes the plural, and the plural the singular"]; accord, *Hall*, *supra*, 97 Cal.App.5th at pp. 1105–1106; *Falcon*, *supra*, 92 Cal.App.5th at p. 955; *Lopez*, *supra*, 78 Cal.App.5th at p. 467.) But under the current statute, the court may do so "only" if it determines "in its sound discretion," that a single aggravating circumstance "justif[ies]" the upper term. (§ 1170(b)(1), (2).) This requirement is functionally different from the abstract concept of eligibility discussed in *Black II*. (*Black II*, *supra*, 41 Cal.4th at p. 812.) Accordingly, unlike our colleagues, we do not consider the relevant inquiry under current section 1170(b) to be simply whether a single aggravating fact is " 'legally sufficient' " or " 'required' " to impose the upper term (dis. opn. of Guerrero, C. J., *post*, at pp. 2, 8, quoting *Black II*, *supra*, 41 Cal.4th at p. 813 and *Osband, supra,* 13 Cal.4th at p. 728); or whether "an upper term sentence is *legally authorized* so long as there exists at least one aggravating circumstance found in a 'constitutionally compliant' manner . . ." (conc. & dis. opn. of Kruger, J., *post*, at p. 9, italics added). (See also discussion, *post*, at pp. 38–39.)

In arguing against this conclusion, the Chief Justice emphasizes that original section 1170(b) discussed in *Black II* also did not speak in terms of eligibility. (Dis. opn. of Guerrero, C. J., *post*, at pp. 19–20.) She urges instead that the concept comes from the "substantive requirements of California sentencing law." (*Id.*, *post*, at p. 20.) It is not clear what these "substantive requirements" would be, beyond section 1170(b) and the accompanying California Rules of Court. *Black II* did not provide much explication of its own on this point. It cited

section 1170(b) and *Osband*. (*Black II*, *supra*, 41 Cal.4th at pp. 813, 815.) *Osband*, *supra*, 13 Cal.4th at page 728 had mentioned a Court of Appeal case, *People v. Castellano* (1983) 140 Cal.App.3d 608, 614–615. *Castellano* cited *People v. Burney* (1981) 115 Cal.App.3d 497, 504–505, which, in turn, cited *People v. Covino* (1980) 100 Cal.App.3d 660. *Covino* stated, without citation to authority, that "[t]here is no authority for appellant's position that the court may not act upon the finding of only one of several circumstances in aggravation, and such a proposition would be unreasonable." (*Id*. at p. 670.) Given that section 1170(b) has been significantly amended since *Black II*, we find it unnecessary to probe this line of analysis further. Suffice it to say that the fact the original section 1170(b) did not reference an eligibility "floor" is not a compelling justification for importing such a concept into the current statute. If anything, it calls *Black II*'s eligibility "gloss" into question.

An example illustrates the false equivalency of applying *Black II*'s holding to the current statutory framework. Suppose the trial court finds based on certified records that the defendant has numerous prior convictions. (§ 1170(b)(3).) But the court finds this circumstance does not justify an upper term sentence because the convictions are decades old and the defendant has lived a law-abiding life in the interim. Instead, the court finds that a different aggravating circumstance, a victim's particular vulnerability, justifies an upper term sentence. If the facts underlying that circumstance were not found by a jury, the court cannot rely on it. (§ 1170(b)(2).) Nonetheless, under the logic of *Black II*, there is no Sixth Amendment violation because the defendant's numerous prior convictions made him "eligible" for an upper term sentence, even though they did not justify imposition of the upper term. Or, as Justice Kruger otherwise

puts it, the existence of the defendant's numerous prior convictions means that "an upper term sentence is legally authorized" under the Sixth Amendment. (Conc. & dis. opn. of Kruger, J., *post*, at p. 9.) But this cannot be so. The Sixth Amendment cannot be satisfied where the statute's substantive requirements are not. Under the current statute, if a properly proven aggravating circumstance does not justify an upper term sentence, the defendant is not eligible for such a sentence. The result does not change because the trial court finds that a different unproven aggravating circumstance justifies such a sentence.

The Chief Justice further reasons that current section 1170(b) "does not identify any particular aggravating fact, or any number of aggravating facts, that must be found in order to impose an upper term sentence." (Dis. opn. of Guerrero, C. J., *post*, at p. 11.) Similarly, Justice Kruger urges that "section 1170(b)(2) does not create a crime whose elements consist of some indeterminate set of aggravating facts — *any* facts at all — but only so long as those facts have been found by a jury and are deemed pertinent by a judge." (Conc. & dis. opn. of Kruger, J., *post*, at p. 13.) They reason that the lack of particularized identification, or numerical requirement, "distinguishes aggravating facts in this context from the elements of a criminal offense, each of which is essential." (Dis. opn. of Guerrero, C. J., *post*, at p. 2; accord, conc. & dis. opn. of Kruger, J., *post*, at pp. 11–13.) Justice Kruger also observes, "if the court can exercise its discretion to impose an upper term sentence based on a single aggravating fact, it simply cannot be said that the Legislature has made additional aggravating facts essential to the sentence." (Conc. & dis. opn. of Kruger, J., *post*, at pp. 12–13.) It is true that section 1170(b) does not enumerate an exclusive

list of aggravating facts, all of which must be proved before the court can impose an upper term sentence. But it is also true that, under the statute, no single aggravating fact is *necessarily* sufficient. (See discussion, *ante*, at pp. 36–37.) The dissenters' reliance on such absolutes is misplaced in this context. Our high court has made clear that a sentencing scheme need not set out a mandatory list of aggravating facts that must be proved in every case in order for *Apprendi*'s protections to apply. (*Cunningham*, *supra*, 549 U.S. at p. 284; *Blakely*, *supra*, 542 U.S. at p. 305 & fn. 8.) Rather, in the context of discretionary sentencing schemes, the Supreme Court's precedent speaks of the right to a jury trial on "any fact that *exposes* a defendant to a greater *potential* sentence." (*Cunningham*, at p. 281, italics added.) The high court has "treated sentencing factors, like elements, as facts that have to be tried to the jury and proved beyond a reasonable doubt." (*Recuenco*, *supra*, 548 U.S. at p. 220.) That the trial court retains "broad discretion to decide what facts may support an enhanced sentence, or to determine whether an enhanced sentence is warranted in any particular case, does not shield a sentencing system from the force of" *Apprendi* and its progeny. (*Cunningham*, at p. 290.)

Our dissenting colleagues also rely on the high court's pronouncements reaffirming the trial court's permissible factfinding role in the context of sentencing. (Conc. & dis. opn. of Kruger, J., *post*, at pp. 2, 4–5, 14; dis. opn. of Guerrero, C. J., *post*, at pp. 3, 6–7, 9–10, 13, fn. 4, 19–21 & fn. 6.) *Apprendi*, for example, observed that "nothing in this history suggests that it is impermissible for judges to exercise discretion — taking into consideration various factors relating both to offense and offender — in imposing a judgment *within the range* prescribed by statute." (*Apprendi*, *supra*, 530 U.S. at p. 481.) And *Alleyne*

observed that "[j]uries must find any facts that increase either the statutory maximum or minimum because the Sixth Amendment applies where a finding of fact both alters the legally prescribed range *and* does so in a way that aggravates the penalty. Importantly, this is distinct from factfinding used to guide judicial discretion in selecting a punishment '*within limits fixed by law*.' [Citation.] While such findings of fact may lead judges to select sentences that are more severe than the ones they would have selected without those facts, the Sixth Amendment does not govern that element of sentencing." (*Alleyne, supra*, 570 U.S. at p. 113, fn. 2, second italics added.)[17] Relying on these and other authorities, the Chief Justice reasons that the Sixth Amendment's protections do not apply when a statute confers discretion on the trial court to determine

---

[17] The Chief Justice also quotes from Justice Jackson's dissenting opinion in *Erlinger, supra*, 602 U.S. at page ___ [144 S.Ct. at p. 1880]: "Even after *Apprendi*, a sentencing judge can still find and consider any fact — including sentencing factors defined by the legislature — so long as the consequence of that fact is not mandatory but rather left to the judge's discretion." (See dis. opn. of Guerrero, C. J., *post*, at p. 11.) Justice Jackson offered this comment in service of her criticism of *Apprendi*'s rule: "*Apprendi*'s distinction between permissible and impermissible judicial factfinding therefore neither aligns with the doctrine's rationale nor achieves its stated goals. As a result, the *Apprendi* rule does little actual work." (*Erlinger*, at p. __ [144 S.Ct. at p. 1880].) No other member of the court signed the dissent or embraced the views it expressed.

Justice Kruger likewise places particular emphasis on language appearing in a concurring opinion in a case that addressed whether a federal Court of Appeals may apply a presumption of reasonableness to sentences falling within a properly calculated sentencing guidelines range. (Conc. & dis. opn. of Kruger, J., *post*, at pp. 5, 14, quoting *Rita v. United States* (2007) 551 U.S. 338, 373 (conc. opn. of Scalia, J.).)

the significance of additional aggravating facts. (Dis. opn. of Guerrero, C. J., *post*, at pp. 9, 11, 13, fn. 4.)

But this premise rests on the assumption that the trial court is authorized to consider unproved, aggravating facts in an exercise of its discretion to impose an upper term sentence. This analysis also fails to honor the distinction between the requirement of properly proven facts and the court's exercise of its discretion when determining the significance of those facts. As the high court's precedents make clear, a jury trial is required on "fact[s]" that are used to justify a sentence in excess of the middle term. (*Apprendi*, *supra*, 530 U.S. at p. 490; see also *Blakely*, *supra*, 542 U.S. at p. 305, fn. 8.) However, "[t]he trial court's evaluation of the relative weight of aggravating and mitigating circumstances is not equivalent to a factual finding." (*Black II*, *supra*, 41 Cal.4th at p. 814, fn. 4.) Moreover, for reasons we have explained, aggravating facts that "justify" the upper term under the current statute are not merely "fact[s] that influence[] judicial discretion." (*Alleyne*, *supra*, 570 U.S. at p. 116; see conc. & dis. opn. of Kruger, J., *post*, at p. 4; dis. opn. of Guerrero, C. J., *post*, at pp. 10, 21, fn. 6.) All such facts are "legally essential to the punishment." (*Blakely*, *supra*, 542 U.S. at p. 313.)

Notwithstanding these observations, it remains true that the current statute preserves the trial court's factfinding role as to a defendant's prior convictions, which are specifically exempted from the Sixth Amendment jury trial right. (§ 1170(b)(3); *Apprendi*, *supra*, 530 U.S. at p. 490; *Almendarez-Torres*, *supra*, 523 U.S. 224; but see *Erlinger*, *supra*, 602 U.S. at p. ___ [144 S.Ct. at p. 1854]; fn. 20, *post*.) In addition, the court is free to determine facts that, in its judgment, call for a reduction of sentence to the lower available term. The current

statute also preserves the trial court's discretion to determine whether an upper term sentence is in fact justified.

### iii. Legislative History

Even if we were to conclude that the current statutory language is ambiguous (see *In re A.N.* (2020) 9 Cal.5th 343, 351–352), the legislative history and purpose of the 2022 statutory amendment confirm our understanding that the Sixth Amendment jury trial right attaches to every aggravating fact, other than a prior conviction, used to justify imposition of the upper term. The Legislature was acting to remedy a Sixth Amendment violation. *Cunningham* gave the Legislature a choice. It could (1) "call[] upon the jury — either at trial or in a separate sentencing proceeding — to find any fact necessary to the imposition of an elevated sentence" or (2) permit "judges genuinely 'to exercise broad discretion . . . within a statutory range.'" (*Cunningham, supra,* 549 U.S. at p. 294.) In 2007, in the immediate wake of *Cunningham*, the California legislature adopted the second approach. (Former § 1170(b), enacted by Stats. 2007, ch. 3, § 2, pp. 6–7.) In 2022, it changed course and adopted *Cunningham*'s first provided alternative; requiring juror factfinding in the absence of waiver or stipulation. A statement by the bill's author, which appears in materials presented to the Legislature as a whole, recognized the need to "'revisit the determinate sentencing structure'" that was adopted in response to *Cunningham*, and emphasized that "'[i]t is important, proper, and *constitutionally conforming* to change the law to ensure that aggravating facts are presented to the jury before a judge imposes a maximum sentence as decided in *Cunningham v. California.*'" (Assem. Floor Analysis, 3d reading analysis of Sen. Bill No. 567 (2021–2022 Reg. Sess.) as amended Sept. 3, 2021, p. 2, italics added.) The statutory

language, informed by the context in which it was passed, demonstrates the Legislature's intent to conform with *Cunningham*'s interpretation of the Sixth Amendment, rather than create a purely state law right.

The Chief Justice argues that this legislative history is irrelevant because the Legislature cannot dictate what the Sixth Amendment requires. (Dis. opn. of Guerrero, C. J., *post*, at pp. 23–24.) But these statements of legislative intent can and do inform us of the statute's substantive requirements, which in turn guide our Sixth Amendment inquiry. The relevant legislative history confirms our understanding that current section 1170(b) operates in such a manner as to trigger the Sixth Amendment jury trial right with respect to every aggravating fact (other than a prior conviction) the trial court uses to justify an upper term sentence.

### iv. Assessing Prejudice Under Chapman

We hold that under the current statute a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established. The violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements. If the reviewing court cannot so determine, applying the *Chapman* standard of review, the defendant is entitled to a remand for resentencing. We disapprove *People v. Hall*, *supra*, 97 Cal.App.5th 1101, 1104–1108, *People v. Ruiz*, *supra*, 97 Cal.App.5th 1068, 1076–1078,

*People v. Falcon, supra*, 92 Cal.App.5th 911, 938–939, *People v. Butler, supra*, 89 Cal.App.5th 953, 960, *People v. Lewis, supra*, 88 Cal.App.5th 1125, *People v. Ross, supra*, 86 Cal.App.5th 1346, *People v. Dunn, supra*, 81 Cal.App.5th 394, 407, *People v. Zabelle, supra*, 80 Cal.App.5th 1098, 1110–1113, *People v. Lopez, supra*, 78 Cal.App.5th 459, 467, footnote 11, and *People v. Flores, supra*, 75 Cal.App.5th 495, 500, to the extent they are inconsistent with today's opinion.[18]

We also clarify what potential issues we do not decide here.

---

[18]    The Chief Justice questions why we do not adopt a second-tier prejudice analysis that considers whether the record shows beyond a reasonable doubt that the trial court would have imposed the same sentence based on a subset of aggravating facts that were either properly proven or that we can conclude would have been found true by the jury beyond a reasonable doubt. (Dis. opn. of Guerrero, C. J., *post*, at pp. 32–34, fn. 8; see also conc. & dis. opn. of Kruger, J., *post*, at p. 13, fn. 2 [similarly suggesting a reviewing court should consider whether the individual facts a trial court relies on to justify an upper term sentence were actually necessary to the trial court's exercise of its discretion].)  But when a defendant is deprived of the Sixth Amendment's jury trial right, the high court has consistently looked to whether the record demonstrates beyond a reasonable doubt that the jury would have made the required finding, and no further. (*Neder, supra*, 527 U.S. at pp. 16–19; *Recuenco, supra*, 548 U.S. at pp. 220–221 [harmless error inquiry for *Apprendi* violation is governed by *Neder*]; see also *Erlinger, supra*, 602 U.S. at p. ___ [144 S.Ct. at pp. 1866–1867] (dis. opn. of Kavanaugh, J.).)  If the answer to that question is yes, we may find the omission harmless.  If the answer is no, we will not engage in an additional hypothetical inquiry into whether we can conclude, to some degree of certainty, that the trial court would have exercised its discretion in the same manner based on a lesser subset of aggravating facts than those it actually relied on to justify an upper term sentence.

Because Lynch was tried and sentenced before section 1170(b)'s latest amendment, this case does not directly present issues of pleading and notice. Accordingly, it is not necessary for us to decide exactly what the statute and the federal Constitution demand in this context.

Under the posture of this case, Lynch was not asked to expressly waive jury trial on aggravating circumstances. Nor did he stipulate to the facts underlying any of the aggravating circumstances listed by the trial court in support of its upper term sentence. We have no occasion here to address the conditions applicable to waiver and stipulation. (See generally *French, supra*, 43 Cal.4th at pp. 46–52.)

Because Lynch did not receive a jury trial under the provisions of current section 1170(b)(2), we have no occasion to opine on the correctness of the CALCRIM jury instructions that have been drafted to guide the jury's deliberations. (CALCRIM Nos. 3224–3251.) Nor need we examine the contours of the unanimity requirement in this context. (See *Erlinger, supra*, 602 U.S. at p. ___ [144 S.Ct. at pp. 1849, 1851]; *Ramos, supra*, 590 U.S. at pp. 90, 92–93.)

Finally, we decline to consider the interplay between section 1170(b)'s jury trial requirement and the current reference in the California Rules of Court to "a nonexhaustive list of factors that may be considered circumstances in aggravation." (Conc. & dis. opn. of Kruger, J., *post*, at p. 12; see also *ibid*. [observing that Cal. Rules of Court, rule 4.421(c) "permit[s] judges broad discretion to find any other factors, as long as they are 'reasonably relate[d] to the defendant or the circumstances under which the crime was committed' "].) We likewise do not here examine the practical differences, if any,

between the jury's factfinding role and the description of aggravating circumstances that appears in the Rules of Court. (See Cal. Rules of Court, rule 4.421.) We simply offer the following observations: The Rules of Court in existence at the time *Cunningham* was decided deemed aggravating circumstances to be " 'facts.' " (*Cunningham, supra*, 549 U.S. at p. 278 &. fns. 7, 8, quoting Cal. Rules of Court, former rules 4.405(d) & 4.421(a), (b).) When section 1170(b) was amended in 2007 to give the trial court broad sentencing authority, the corresponding Rules of Court were redrafted to refer to aggravating circumstances as "factors," but the substantive descriptions remained unchanged. The text of section 1170(b)(2) itself "arguably allows for a distinction to be drawn between 'circumstances in aggravation' that can justify the imposition of the upper term and '*the facts underlying* those circumstances' that the jury must find true beyond a reasonable doubt." (*Chavez Zepeda v. Superior Court* (2023) 97 Cal.App.5th 65, 85, fn. 4, quoting § 1170(b)(2).) Notwithstanding this terminology, *Chavez Zepeda* held that "section 1170(b)(2) unambiguously conveys the Legislature's intent to have the jury make findings about the truth of aggravating factors in rule 4.421 . . . ." (*Chavez Zepeda*, at p. 77; see also *id*. at p. 85, fn. 4.) The CALCRIM instructions likewise instruct the jury to make findings such as whether: the victim was particularly vulnerable (CALCRIM No. 3226); the defendant acted with planning, sophistication, or professionalism (CALCRIM No. 3230); or the defendant poses a serious danger to society (CALCRIM No. 3234). The parties before us have not urged a distinction between aggravating circumstances considered by the trial court and the facts the jury must find true beyond a

47

reasonable doubt. Accordingly, we treat them the same for purposes of this opinion without taking a position on the issue.

### E. *Application of the* Gutierrez *" 'Clearly Indicate[s]' " Standard*

*Gutierrez*, *supra*, 58 Cal.4th 1354 considered the appropriate remedy when the trial court was not aware of the full scope of its discretionary powers at the time of the defendant's sentencing. That case involved a presumptive sentence having to do with sentencing of minors convicted of murder. We disapproved the longstanding interpretation that when a minor defendant was tried as an adult and convicted of a special circumstance murder, section 190.5 made life without parole the presumptive sentence. (*Gutierrez*, at pp. 1370, 1387.) We clarified that "the trial court must consider all relevant evidence bearing on the 'distinctive attributes of youth' discussed in *Miller*[ *v. Alabama* (2012) 567 U.S. 460] and how those attributes 'diminish the penological justifications for imposing the harshest sentences on juvenile offenders.' " (*Gutierrez*, at p. 1390, quoting *Miller*, at p. 472.) We noted that the trial courts in the consolidated *Gutierrez* cases had imposed an LWOP sentence under the *presumption* favoring that term. (*Gutierrez*, at p. 1390.) Accordingly, "neither court made its sentencing decision with awareness of the full scope of discretion conferred by section 190.5(b) or with the guidance set forth in *Miller* and this opinion for the proper exercise of its discretion." (*Id*. at pp. 1390–1391.) In this situation, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*Id*. at p. 1391, quoting *People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8 [clarifying that trial court has

48

discretion to choose whether to sentence under § 667.6 or § 1170.1].) We further concluded that remand was necessary on the record before us: "[a]lthough the trial courts . . . understood that they had some discretion in sentencing, the records do not clearly indicate that they would have imposed the same sentence had they been aware of the full scope of their discretion." (*Gutierrez*, at p. 1391.)

Subsequently, *People v. Salazar* (2023) 15 Cal.5th 416 (*Salazar*) applied the *Gutierrez* remand standard to a resentencing under amended section 1170, subdivision (b)(6). (*Salazar*, at pp. 419, 424–426, 431–432; see Stats. 2021, ch. 731, §§ 1.3, 3, subd. (c).) The amended statute provides that the trial court "shall" enter a lower term sentence when any of the following factors contributed to the offense: "psychological, physical, or childhood trauma;" the offender's "youth," at the time of the commission of the offense; or the offender "is or was a victim of intimate partner violence or human trafficking." (§ 1170(b)(6)(A), (B), (C).) The court may only deviate from the lower term if it "finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice." (*Id.*, subd. (b)(6).) *Salazar* held that these changes create a presumption that affects the scope of the trial court's discretionary sentencing authority. (*Salazar*, at pp. 419, 426–427, 429–430.) Accordingly, when there is evidence in the record meeting the statute's threshold requirement for triggering the lower term presumption, a defendant is entitled to a remand for resentencing unless the record " ' "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*Id.* at p. 425, quoting *Gutierrez, supra,* 58 Cal.4th at p. 1391.) Upon reviewing

the record in that case, we concluded that a remand was warranted. The trial court's other rulings, such as its denial of the defendant's *Romero* motion[19] and its imposition of consecutive sentences, were not sufficiently aligned with the new factors such that the record clearly indicated how the court would have exercised its newfound discretion. (*Salazar*, at pp. 428–430.)

Several Courts of Appeal have held that the latest amendment to section 1170(b)(1) and (2) did more than codify the holding in *Cunningham*; it also fundamentally altered the trial court's sentencing discretion in a manner similar to *Gutierrez* and *Salazar*. (*Falcon*, *supra*, 92 Cal.App.5th at p. 921; *Lewis*, *supra*, 88 Cal.App.5th at pp. 1136–1138; *Wandrey*, *supra*, 80 Cal.App.5th at pp. 981–982.) They focus on the amended statute's presumption in favor of a low or middle term sentence that may only be overcome when aggravating circumstances "justify" an upper term sentence. (§ 1170(b)(1), (2); see *Falcon*, at pp. 918, 925–926, 944–945, *Wandrey*, at p. 981.) "As a result, the trial court no longer has full discretion to impose an upper term sentence without the weight of any presumption against it, as it did under the former version of the DSL." (*Falcon*, at p. 921.) The appellate courts have concluded that, for sentences imposed before the effective date of section 1170's latest amendment, the standard for reversal articulated in *Gutierrez* applies and must be satisfied *in addition to* a finding of harmlessness regarding any omitted factual finding. (*Falcon*, at pp. 921, 938, 949; *Lewis*, at pp. 1134–1138; *Wandrey*, at p. 982.) This is so because neither a *Chapman* nor a *Watson* review "can adequately indicate that resentencing is *unnecessary* upon

_____

[19] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

retroactive application of amended section 1170(b)." (*Falcon*, at p. 938.) Instead, applying *Gutierrez* in this context, *Falcon* articulated the following test: "to properly conclude that resentencing is unwarranted upon retroactive application of amended section 1170(b), an upper term sentence must remain legal under federal and state law; *and* it must pass *Gutierrez*'s clearly indicated test." (*Id.* at p. 943; accord, *Wandrey*, at p. 982; *Lewis*, at pp. 1136–1138.) The Court of Appeal in this case took a different view, holding that the latest amendment to section 1170(b)(1) and (2) did not alter the scope of the trial court's sentencing discretion. It reasoned that, under the amended statute, "trial courts apply their discretion to the same set of aggravating circumstances to decide whether to impose an upper term sentence, but the facts underlying those circumstances now may only be found in one of the permissible ways." Accordingly, it found the *Gutierrez* standard inapplicable.

We conclude that the amendment at issue did alter the trial court's sentencing discretion. At the time Lynch was sentenced, former section 1170(b) gave a sentencing court broad discretion to select among three terms and impose a sentence that in its judgment served the interests of justice. (Former § 1170(b), enacted by Stats. 2007, ch. 3, § 2, pp. 6–7.) The current statute narrows that authority by creating a presumption against the upper term, which may be overcome only if the required facts are properly proven and the court concludes that term is justified. These changes circumscribe the trial court's previously broad discretion to select whichever of the three terms of imprisonment serves the interests of justice. As a result, the *Gutierrez* standard applies to sentences imposed before the statute's 2022 amendment, or when the record

otherwise indicates that the court has not exercised its " ' "informed discretion." ' " (*Gutierrez, supra,* 58 Cal.4th at p. 1391.)

Relying on *Sandoval, supra,* 41 Cal.4th 825, the Chief Justice argues that the *Gutierrez* standard does not apply because the change in the trial court's discretion brought about by the current statutory amendment is " '*not substantial.*' " (Dis. opn. of Guerrero, C. J., *post,* at p. 29, quoting *Sandoval,* at p. 850.) She would allow for review under *Gutierrez* only in " 'the rarest of cases' (*Sandoval,* . . . at p. 850) in which the new maximum middle term presumption would materially affect the trial court's decision to impose the upper term." (Dis. opn. of Guerrero, C. J., *post,* at p. 37, fn. 9.) But again, we conclude reliance on our past precedent is misplaced.

*Sandoval* considered how to conduct proceedings on remand for defendants whose sentences were reversed after a finding of constitutional error under *Cunningham.* (*Sandoval, supra,* 41 Cal.4th at pp. 843–844.) Specifically, the court considered whether it should fashion a sentencing procedure which allowed for a jury trial on aggravating circumstances or, alternatively, direct that those defendants be resentenced under the same procedure that the Legislature had subsequently enacted to remedy the *Cunningham* violation, namely, allowing the trial court to choose between the three available terms in its discretion. (*Id.* at pp. 844–852.) In opting for the latter approach, the court observed: "[I]t is both accurate and realistic to recognize that, in practical terms, the difference between the pre-*Cunningham* provision of the DSL enacted by the Legislature [which included a middle term presumption] and a statutory scheme in which the trial court has broad discretion to select among the three available terms is not substantial. It

seems likely that in all but the rarest of cases the level of discretion afforded the trial court under the Attorney General's proposal [which allowed selection among the three terms] would lead to the same sentence as that which would have been imposed under the DSL as initially enacted." (*Sandoval*, at p. 850.)

This point loses its salience in the inverse situation presented here. In *Sandoval*, the trial court had already sentenced the defendant under a scheme that included a presumption in favor of the middle term. Despite that presumption, the trial court had imposed the upper term. (See *Sandoval, supra*, 41 Cal.4th at p. 855 ["as applied to cases such as this one, in which defendant already has been sentenced to the upper term under the version of the DSL in place at the time she committed the offense, application of the revised sentencing scheme never could result in a harsher sentence"].) It was therefore no leap to conclude that, if given broad discretion to choose among the triad terms, a court would impose the same sentence.

The same logic does not hold true here. The court sentenced Lynch to the upper term when it had broad discretion to select among the three terms; but under the current law, it is constrained by a presumption against the upper term. It is this constraint on the trial court's discretion that triggers the *Gutierrez* standard because " '[a] court which is unaware of the scope of its discretionary powers [cannot] exercise that "informed discretion" . . . .' " (*Gutierrez, supra*, 58 Cal.4th at p. 1391.) In this circumstance, "it is almost always speculative for a reviewing court to say what the sentencing court would have done if it had known the scope of its discretionary powers at the time of sentencing." (*Salazar, supra*, 15 Cal.5th at p. 431.)

*Sandoval* did not consider or apply the *Gutierrez* standard. Its inquiry into how "substantial" the change is (*Sandoval, supra,* 41 Cal.4th at p. 850) may inform a *Watson* harmless error inquiry, i.e. whether it is reasonably probable that the trial court would have reached the same outcome even under the new law. But we made clear in *Salazar, supra,* 15 Cal.5th at page 425 that *Gutierrez*'s clearly indicates standard is not equivalent to *Watson*.

In short, the posture in *Sandoval* differs from the situation we confront here, and that context matters. The logic of *Gutierrez* and *Salazar* govern in this circumstance and support our conclusion that the clearly indicates standard governs here as well.

### F. Lynch Is Entitled to a Remand for Resentencing

Applying the standards articulated above, we conclude Lynch is entitled to a remand for resentencing.

The trial court cited eight circumstances in aggravation to support imposing the upper term sentence for the principal count. (See *ante,* at p. 5.) The Court of Appeal held that two aggravating circumstances, Lynch's numerous prior convictions and his use of a weapon during the commission of the offenses, were proven in compliance with current section 1170(b), but the remaining six aggravating circumstances were not.[20] The Attorney General does not dispute these findings here.

---

[20] In reaching this conclusion, the Court of Appeal held that section 1170(b)(2) and (3) require a jury trial on the facts underlying three aggravating circumstances related to Lynch's criminal history: (1) he had served prior prison terms, (2) he had just been released from prison and was on parole at the time

As explained, *Chapman* provides the proper standard of review in this case. Lynch is entitled to a reversal and remand for resentencing unless, after examining the entire cause, including the evidence as to all relevant circumstances (*People v. Aledamat* (2019) 8 Cal.5th 1, 13), we can conclude that the omission of a jury trial was harmless beyond a reasonable doubt as to *every* aggravating fact the trial court used to justify an upper term sentence. In making this determination, we may " 'examine[] what the jury *necessarily* did find and ask[] whether it would be impossible, on the evidence, for the jury to find *that* without *also* finding the missing fact as well.' [Citation.] In other words, if ' "[n]o reasonable jury" ' would have found in favor of the defendant on the missing fact, given the jury's actual verdict and the state of the evidence, the error may be found harmless beyond a reasonable doubt." (*In re Lopez* (2023) 14 Cal.5th 562, 580, quoting *Aledamat*, at p. 15, first italics added.) We may also find the omission harmless if we can conclude beyond a reasonable doubt "that the omitted [fact] was

---

he committed the crimes, and (3) his prior performance on parole was unsatisfactory. We find it unnecessary to address the scope of the prior conviction exception, either as a statutory or a constitutional matter, and we express no opinion on it here. The Attorney General does not challenge the Court of Appeal's conclusion on this point; nor is it determinative to the outcome given our conclusion below that Lynch is entitled to a reversal and remand based on the trial court's reliance on other aggravating facts that clearly must be proven to the jury under the amended statute.

As noted, the high court recently issued a decision on the scope of the *Almendarez-Torres* exception. (*Erlinger, supra*, 602 U.S. ___ [144 S.Ct. 1840].) We are poised to consider the issue in *People v. Wiley* (2023) 97 Cal.App.5th 676, review granted March 12, 2024, S283326.

uncontested and supported by overwhelming evidence." (*Neder*, *supra*, 527 U.S. at p. 17.)

We have cautioned that a prejudice analysis following a change in the law respecting proof of aggravating circumstances "can be problematic. The reviewing court cannot assume that the record reflects all of the evidence that would have been presented to the jury, or that the defendant had the same incentive and opportunity at a sentencing hearing to contest the aggravating circumstance. [Citation.] . . . '[T]o the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court.' [Citation.] . . . 'Many of the aggravating circumstances described in the rules require an imprecise quantitative or comparative evaluation of the facts,'" with the victim's particular vulnerability being one example. (*People v. Boyce* (2014) 59 Cal.4th 672, 728–729, quoting *Sandoval*, *supra*, 41 Cal.4th at p. 840.)

Even under the less rigorous *Watson* standard, the Court of Appeal held that the omission of a jury trial on facts underlying three of the aggravating circumstances was prejudicial: the crimes involved a *high degree* of cruelty, viciousness, and callousness; the victim was *particularly* vulnerable; and Lynch poses a *serious* danger to society. Applying the more rigorous *Chapman* standard, we likewise find prejudice. The jury was not asked to make findings beyond a reasonable doubt on these aggravating facts. The defense contested the facts supporting each of these circumstances at the sentencing hearing. It would not have been impossible,

56

given the jury's findings and the evidence, for the jury to have found in Lynch's favor on one or more of these aggravating facts. Indeed, the jury acquitted Lynch of the most serious charge involving Jasmine Doe, assault with a deadly weapon. Because we cannot find the omission of a jury trial harmless beyond a reasonable doubt as to *every* aggravating fact relied upon by the trial court to impose an upper term, Lynch's sentence must be reversed. " 'The proper remedy for this type of failure of proof — where . . . [aggravating facts] were "never tried" to the jury — is to remand and give the People an opportunity to retry' " the aggravating facts. (*Cooper*, *supra*, 14 Cal.5th at pp. 746–747, quoting *People v. E.H.* (2022) 75 Cal.App.5th 467, 480.)

We likewise conclude that Lynch is entitled to a remand under the *Gutierrez* standard. We begin with our recent comments in *Salazar*. There, we emphasized that "when the applicable law governing the defendant's sentence has substantively changed after sentencing, it is almost always speculative for a reviewing court to say what the sentencing court would have done if it had known the scope of its discretionary powers at the time of sentencing." (*Salazar*, *supra*, 15 Cal.5th at p. 425.) We further observed that "[m]ere reliance on the length of the original sentence and attendant decisions, such as imposing consecutive sentences, imposing middle or upper term sentences, or declining to strike enhancements, is not sufficient to provide a clear indication of what a sentencing court might do on remand" had it been fully aware of the presumptive lower term sentence for cases involving the enumerated mitigating circumstances. (*Id.* at p. 431.) Upon reviewing the record in that case, we concluded that the trial court's other rulings, such as its denial of the defendant's *Romero* motion and its imposition of consecutive

sentences, were not sufficiently aligned with the new factors such that the record clearly indicated how the court would have exercised its newfound discretion. (*Salazar*, at pp. 428–430.)

Here, the trial court found eight circumstances in aggravation and none in mitigation. It emphasized, among other things, that Lynch had committed repeated acts of violence; his use of multiple weapons in this case involved great violence, cruelty, viciousness, and callousness; and his criminal record demonstrated a serious danger to society. He was on parole when he committed the current crimes. Based on these findings, the court concluded that an upper term sentence was "appropriate." This record certainly supports a finding that the trial court acted within its discretion in choosing between the three available terms of punishment under the law as it stood at the time of sentencing. But it does not necessarily speak to how the court would have exercised its discretion under the weight of the presumptive middle term maximum sentence that currently exists. (See *Falcon, supra*, 92 Cal.App.5th at pp. 955–956.) Notably, the court did not make the kind of definitive statements that we have found to clearly indicate it would not impose a lesser sentence under any circumstances. (See, e.g., *People v. Flores* (2020) 9 Cal.5th 371, 432 [in finding the defendant " 'deserving [of] the ultimate sentence of death,' " trial court observed that the defendant was " 'the worst of the worst,' " that he " 'show[ed] absolutely no remorse' "and that " '[i]t's as if he has no soul' "]; *Salazar, supra*, 15 Cal.5th at p. 431 [positing an example where "the sentencing court announces that it is aware of forthcoming legislation and then explains how it would exercise its discretion under that legislation"].) Rather, this record comes within our general admonishment in *Salazar* that "[m]ere reliance on the length of

the original sentence and attendant decisions, such as imposing consecutive sentences, imposing middle or upper term sentences, or declining to strike enhancements, is not sufficient to provide a clear indication of what a sentencing court might do on remand if it had been fully aware of the scope of its discretionary powers." (*Salazar*, at p. 431.) In other words, it would be "speculative" (*Salazar*, at p. 425) to conclude the trial court's finding that an upper term sentence was "appropriate" in the exercise of its broad discretion, clearly indicates that it would have found aggravating circumstances sufficiently weighty to "justify" an upward departure from the legislative mandate for no more than a middle term sentence. The reasoning in *Gutierrez* and *Salazar* also requires reversal of the sentence and remand here.

Further proceedings on remand are to be conducted in accordance with the current statutory requirements and the defendant given the opportunity for the jury trial, of which he was deprived. (Cf. *Salazar*, *supra*, 15 Cal.5th at p. 432; *Cooper*, *supra*, 14 Cal.5th at pp. 746–747.) On remand, the parties remain free to introduce at trial all relevant evidence to support or contest the factual support for the aggravating circumstances set out in the California Rules of Court. The court may rely on any properly proven aggravating facts, including prior convictions or facts necessarily found by the jury to support a verdict on underlying counts and enhancements. The court retains its discretion to impose an upper term sentence if it concludes that one or more properly proved circumstances justify such a sentence. (§ 1170(b)(2).) If it cannot so conclude, it may impose no more than a middle term for each of the counts on which Lynch stands convicted. (*Id*., subd. (b)(1).)

## III. DISPOSITION

The judgment of the Court of Appeal affirming Lynch's sentence is reversed.  We remand to the Court of Appeal with directions that it return the matter to the trial court for further litigation of the aggravating circumstances and for the court to exercise its discretion under current section 1170(b) as indicated here.  (*Sandoval, supra*, 41 Cal.4th at p. 858.)

**CORRIGAN, J.**

**We Concur:**

**LIU, J.**
**GROBAN, J.**
**EVANS, J.**

PEOPLE v. LYNCH

S274942


Concurring and Dissenting Opinion by Justice Kruger


In its 2022 amendments to California's determinate sentencing law, the Legislature instructed that an elevated, upper term sentence may be imposed only if the court determines there are aggravating circumstances that justify it. (Pen. Code, § 1170, subd. (b)(2) (section 1170(b)(2)), as amended by Stats. 2021, ch. 731, § 1.3.)  The Legislature also created a statutory right to a jury determination of every aggravating fact, other than the fact of a prior conviction, on which a sentencing court chooses to rely in imposing an upper term sentence. (§ 1170(b)(2).)  This case requires us to assess the impact of these new provisions on the class of criminal cases, like Deandre Lynch's, in which the law took effect after the defendant was sentenced but before the judgment had become final on direct appeal.

Although I agree with much of what the majority says on this subject, the majority goes too far in holding that a violation of the new statutory right to a jury finding on each and every aggravating fact is also, perforce, a violation of the federal Constitution.  That conclusion is contrary to this court's precedent addressing effectively the identical constitutional issue.  It also misses the foundational point on which the precedent rests.  The Constitution preserves the historic, traditional role of the jury in determining criminal liability.  As the United States Supreme Court has repeatedly affirmed, that traditional role encompasses the facts that the Legislature has

1

made essential to punishment for a crime, but it does not extend to each and every factor that might inform a sentencing judge's determination whether an otherwise statutorily authorized sentence is justified under the circumstances of the case. (E.g., *Apprendi v. New Jersey* (2000) 530 U.S. 466, 481 (*Apprendi*); see *People v. Black* (2007) 41 Cal.4th 799, 813–814 (*Black II*); *People v. Sandoval* (2007) 41 Cal.4th 825, 838–839 (*Sandoval*).)

Our precedent certainly does not prevent the Legislature from expanding the jury right beyond its traditional bounds, as it has done in the amendments to section 1170(b)(2). But stare decisis does — or at least should — prevent us from treating this important legislative innovation as though it were also a matter of constitutional command.

I nonetheless concur in the judgment because, as I see it, the majority's constitutional reasoning is not necessary to its conclusion. In the end, what matters is that Lynch had a right to a jury trial on all aggravating facts. Whatever the source of the right, I do not think we can say that the deprivation of the right was harmless. Lynch is therefore entitled to further sentencing proceedings in accordance with the new law.

## I.

## A.

I begin with the constitutional issue. The Sixth Amendment to the federal Constitution provides that "[i]n all criminal prosecutions, the accused" has "the right to a speedy and public trial, by an impartial jury." (U.S. Const., 6th amend.) Meanwhile, the due process clauses of the Fifth and Fourteenth Amendments guarantee "for criminal defendants those procedural protections well established at common law, including the 'ancient rule' that the government must prove to a

jury every one of its charges beyond a reasonable doubt." (*Erlinger v. United States* (2024) 602 U.S. ___ [144 S.Ct. 1840, 1849] (*Erlinger*).)  Taken together, these provisions entitle a criminal defendant "to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " (*Apprendi*, *supra*, 530 U.S. at p. 477.)  But what qualifies as an "element" that must be so proved?

Tracing the historical understanding of the scope of the jury guarantee, the court in *Apprendi* concluded the inquiry is not controlled by labels but by function.  Whether the Legislature calls a particular fact an "element" of the offense, or a "sentencing factor," or something else entirely, the rule is the same:  The right to jury trial in a criminal prosecution encompasses every fact, other than the fact of a prior offense, that the Legislature has made essential to the punishment of a charged offense.  (*Apprendi*, *supra*, 530 U.S. at p. 490; see *id.* at pp. 488–490 [discussing the exception for prior offenses based on the holding of *Almendarez-Torres v. United States* (1998) 523 U.S. 224].)[1]  Applying this rule, the court in *Apprendi* struck down a 12-year sentence exceeding the otherwise applicable 10-year statutory maximum where the enhancement was based on a judge's finding, by a preponderance of the evidence, that the defendant's crime was motivated by racial bias. (*Apprendi*, at p. 490.)

---

[1]     This rule initially applied only to facts necessary to impose a sentence exceeding an otherwise applicable statutory maximum. (*Apprendi, supra*, 530 U.S. at p. 490.)  In *Alleyne v. United States* (2013) 570 U.S. 99, 116 (*Alleyne*), the court concluded the same rule applies to facts necessary to the imposition of a mandatory minimum.

In elaborating the rule, the court in *Apprendi* was careful to avoid suggesting that the jury right extends to every fact that might ultimately affect the sentence a defendant receives. The high court made a point of distinguishing between the right to a jury determination of facts that alter the maximum sentence prescribed by law, and facts relevant to a judge's selection of an appropriate sentence *within* a legally authorized range. The court explained: "We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion — taking into consideration various factors relating both to offense and offender — in imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case. See, *e.g.*, *Williams v. New York*, 337 U.S. 241, 246 (1949) ('[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed *within limits fixed by law*' (emphasis added))." (*Apprendi*, *supra*, 530 U.S. at p. 481.) The point, the court emphasized, was that the court's discretion is necessarily "bound by the range of sentencing options prescribed by the legislature" that has the power to define crimes and their punishment. (*Ibid*.)

In the years since *Apprendi*, the high court has continued to refine the important rule it announced. But the court has also continued to reaffirm the limits of that rule. (See, e.g., *Alleyne*, *supra*, 570 U.S. at p. 116 ["Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion,

informed by judicial factfinding, does not violate the Sixth Amendment."]; *Dillon v. United States* (2010) 560 U.S. 817, 828–829 [" '[J]udges in this country have long exercised discretion of this nature in imposing sentence *within [established] limits* in the individual case,' and the exercise of such discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts."]; see also, e.g., *Erlinger*, *supra*, 602 U.S. at p. ___ [144 S.Ct. at p. 1879] (dis. opn. of Jackson, J.) ["A sentencing judge today remains free, consistent with *Apprendi*, to impose any punishment within a prescribed sentencing range based on whatever facts she deems relevant."].) In sum: "[T]here is a fundamental difference, one underpinning [the high court's] entire *Apprendi* jurisprudence, between facts that *must* be found in order for a sentence to be lawful, and facts that individual judges *choose* to make relevant to the exercise of their discretion. The former, but not the latter, must be found by the jury beyond a reasonable doubt in order 'to give intelligible content to the right of jury trial.' " (*Rita v. United States* (2007) 551 U.S. 338, 373 (conc. opn. of Scalia, J.) (*Rita*).)

## B.

Not long after *Apprendi* was decided, the United States Supreme Court began to apply its rule to various determinate sentencing schemes, including Washington's Sentencing Reform Act (*Blakely v. Washington* (2004) 542 U.S. 296), the then-mandatory federal sentencing guidelines (*United States v. Booker* (2005) 543 U.S. 220), and, most directly pertinent here, California's former determinate sentencing law (*Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*)).

*Cunningham* considered the constitutionality of a former version of California's determinate sentencing law (what the

majority refers to as the "original statute"). (See maj. opn., *ante*, at p. 8.) At the time, Penal Code former section 1170, subdivision (b) provided: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime. . . . In determining whether there are circumstances that justify imposition of the upper or lower term, the court may consider the record in the case, the probation officer's report, other reports including reports received pursuant to Section 1203.03 and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing. The court shall set forth on the record the facts and reasons for imposing the upper or lower term." The California Rules of Court, adopted at the direction of the Legislature, further specified that " '[t]he middle term shall be selected unless imposition of the upper or lower term is justified by circumstances in aggravation or mitigation,' " and set out a nonexhaustive list of factors for a sentencing court to consider in making this determination. (*Cunningham*, *supra*, 549 U.S. at p. 278, quoting Cal. Rules of Court, rule 4.420(a); see also *Cunningham*, at p. 278, citing Cal. Rules of Court, rule 4.421(a)–(c).) The United States Supreme Court concluded that this scheme violated *Apprendi* because it permitted the judge to find facts necessary to satisfy the statutory aggravation requirement, and thus legally necessary to impose an elevated upper term sentence. (*Cunningham*, at pp. 274–275.)

In the immediate wake of *Cunningham*, this court had to determine what relief to order in cases in which a sentencing

court had imposed an upper term sentence in reliance on this former version of the determinate sentencing law. To decide this remedial question, the court had to consider the precise scope of the constitutional right at issue. Examining the *Apprendi* line of cases, this court in *Black II* concluded the jury-trial requirement "applies only to a fact that is 'legally essential to the punishment' [citation], that is, to 'any fact that exposes a defendant to a greater potential sentence' than is authorized by the jury's verdict alone." (*Black II*, *supra*, 41 Cal.4th at p. 812.) We explained that this requirement is satisfied "as long as a single aggravating circumstance that renders a defendant *eligible* for the upper term sentence has been established in accordance with the requirements of *Apprendi* and its progeny." (*Ibid.*; accord, *Sandoval*, *supra*, 41 Cal.4th at p. 839.) That is to say, once the jury has found — or the defendant has admitted — facts that *authorize* an upper term sentence, "the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury." (*Black II*, at p. 813.) This conclusion, we explained, is consistent with the traditional discretion afforded sentencing courts in the American system. (*Ibid.*, citing *Rita*, *supra*, 551 U.S. at p. 352.) The decision was also, as we observed, consistent with the conclusions of other state high courts that had addressed similar issues and had likewise concluded that the Constitution required a jury finding (or else a finding exempt from the jury requirement) only as to a single aggravating circumstance. (*Black II*, at p. 813, fn. 3, citing, inter alia, *Lopez v. People* (Colo.

2005) 113 P.3d 713, 731; cf. *Cunningham*, *supra*, 549 U.S. at p. 294, fn. 17 [citing *Lopez* with approval].)

*Black II* and *Sandoval* addressed what was then a transitional issue; by the time the cases were decided, the Legislature had already amended the determinate sentencing law to cure the constitutional infirmity identified in *Cunningham* by committing the selection of the lower, middle, or upper term to the full discretion of the sentencing court. (See *Sandoval*, *supra*, 41 Cal.4th at p. 845, citing Stats. 2007, ch. 3.) But the Legislature's 2022 amendments to section 1170(b)(2), which mark a return to a system of constrained authority to impose upper term sentences, bring the holdings of *Black II* and *Sandoval* to the fore.

## C.

As the majority notes, most of the Courts of Appeal to consider the effect of the 2022 amendments have followed our holdings in *Black II* and *Sandoval*. They have concluded that the Legislature's return to a regime resembling the pre-2007 law means that the federal Constitution now requires a jury to find at least one circumstance in aggravation as a prerequisite to an upper term sentence. But they have also concluded, in line with *Black II* and *Sandoval*, that the Constitution otherwise permits sentencing courts to make additional findings in deciding whether an upper term sentence is appropriate under the circumstances of the case. To be sure, section 1170(b)(2) now requires that these findings, too, be made by a jury beyond a reasonable doubt. But this is because the Legislature has chosen to impose this requirement as a matter of state law; it is not because the Constitution demands it.

The majority opines that the Courts of Appeal have been mistaken to think *Black II* and *Sandoval* have anything to do with this case, because the law now is not the same as it was then. The majority goes on to conclude that under the current version of section 1170(b)(2), the federal Constitution — not just state statutory law — requires a jury finding as to every aggravating circumstance on which a trial court relies in imposing an upper term sentence. (Maj. opn., *ante*, at pp. 25–26.)

On this point, I think the Courts of Appeal have gotten it right. The constitutional question we confront here is essentially identical to the question we decided in *Black II* and *Sandoval*, so stare decisis requires us to give the same answer. True, the Legislature did not reenact the determinate sentencing law in precisely the same form as at the time those cases were decided. But the Legislature did not alter the statute in any way that matters to the constitutional inquiry. The basis for *Black II*'s holding was that an upper term sentence is legally authorized so long as there exists at least one aggravating circumstance found in a "constitutionally compliant" manner (that is, by a jury beyond a reasonable doubt, or else concerning the fact of a prior conviction, or else admitted by the defendant as part of a plea). As the majority acknowledges (maj. opn., *ante*, at pp. 36–37), following the 2022 amendments, it is still true that an upper term sentence is statutorily authorized so long as there exists at least one aggravating circumstance established in accordance with *Apprendi*. It is also true that a court may, in its discretion, consider a wider array of factors to determine whether that statutorily authorized upper term sentence is justified under the circumstances. It follows that only a single circumstance need be established in accordance with Sixth

Amendment jury factfinding requirements; any further requirement that the jury find additional aggravating circumstances beyond a reasonable doubt is a creature of state statutory law rather than a matter of constitutional mandate.

In concluding otherwise, the majority makes much of the fact that amended section 1170(b)(2) permits a trial court to impose an upper term sentence " 'only' when circumstances in aggravation 'justify' that term." (Maj. opn., *ante*, at p. 29.) But as the majority acknowledges, this "justification" condition is not new to the law; the same condition existed in 2007, when *Black II* and *Cunningham* were decided. The former version of the determinate sentencing law spoke of "determining whether there are circumstances that *justify* imposition of the upper or lower term" (Pen. Code, former § 1170, subd. (b), italics added), and the California Rules of Court repeated the requirement more explicitly, providing that " '[t]he middle term shall be selected unless imposition of the upper or lower term is *justified* by circumstances in aggravation or mitigation' " (*Cunningham*, *supra*, 549 U.S. at p. 278, quoting Cal. Rules of Court, rule 4.420(a), italics added).

*Black II* made clear that the use of the term "justify" does not mean that each and every fact that might inform a judge's sentencing discretion somehow becomes statutorily " ' "essential" ' " to an upper term sentence. (*Black II*, *supra*, 41 Cal.4th at p. 814; see *Erlinger*, *supra*, 602 U.S. at p. ___ [144 S.Ct. at p. 1850].) In a statutory scheme in which a judge is permitted to impose an upper term sentence based on a single aggravating circumstance, this is a logical impossibility. The phrase simply conveys that, once a qualifying aggravator has "raise[d] the maximum permissible sentence from the middle term to the upper term," the sentencing court must exercise "its

discretion in selecting the appropriate term from among those authorized for the defendant's offense," and decide whether the legally authorized upper term is warranted under the circumstances. (*Black II, supra,* 41 Cal.4th at p. 816.) This is how the statute operated then, and it is still how it operates now.

The majority does not dispute any of this, but argues that various changes in the amended statutory language "reanimate" the argument we rejected in *Black II* about the constitutional significance of the statutory reference to aggravating facts "justif[ying]" an upper term sentence. (Maj. opn., *ante,* at p. 36.) These minute adjustments in wording make no functional difference. In the end, the only pertinent difference between the law at issue in *Black II* and *Sandoval* and current law is that the latter requires a jury trial on all aggravating circumstances on which a sentencing court relies in finding an upper term sentence justified, while the former does not. (See maj. opn., *ante,* at pp. 35–36.) The fact that a statute may require something does not, of course, necessarily mean that the federal Constitution requires it, too. But this is essentially what the majority holds when it reads the new statutory jury right on aggravating facts into the federal Constitution.

The majority's reasoning based on the statutory jury right appears to go something like this: The federal Constitution requires jury trial only as to facts that function like elements of the offense, in that they are legally essential to the punishment. In the amended determinate sentencing law, the Legislature has decided to require jury trial on all aggravating facts — that is, whatever facts the trial court deems relevant to its decision to impose the upper term sentence. Therefore, the Legislature must have intended to make all of these aggravating facts

legally essential to the punishment and for them to "effectively function like elements of a crime." (Maj. opn., *ante*, at p. 31.)

There are significant problems with this logic, beginning with the fact that it does not reflect how the statute actually works. As was true of the original statute considered in *Cunningham*, the amended determinate sentencing law does not specify what aggravating circumstances a sentencing court may rely on — indeed, it does not specify what constitutes an aggravating circumstance at all. (See § 1170(b)(2).) Rather, the California Rules of Court, adopted by the Judicial Council, sets out a nonexhaustive list of factors that may be considered circumstances in aggravation, while permitting judges broad discretion to find any other factors, as long as they are "reasonably relate[d] to the defendant or the circumstances under which the crime was committed." (Cal. Rules of Court, rule 4.421(c).) And more importantly, the law does not specify *how many* of these aggravating circumstances, beyond one, a sentencing court must cite to justify a particular upper term sentence.

The majority is, of course, correct that a sentencing judge may determine in a particular case that an upper term is not justified by a particular aggravating circumstance. (Maj. opn., *ante*, at pp. 38–39.) But that does not change the reality that a judge is statutorily authorized to impose an upper term sentence if a single aggravating fact is found. Whether that aggravating fact alone suffices, or whether additional facts are needed, is a matter left to the sentencing court's discretion. Again, if the court can exercise its discretion to impose an upper term sentence based on a single aggravating fact, it simply cannot be

said that the Legislature has made additional aggravating facts essential to the sentence.[2]

And while the majority is correct that the statute now requires that all aggravating facts be pleaded and proved *in the same way* as elements of an offense — that is, to a jury, beyond a reasonable doubt — they are not *actually* elements in the sense that matters to the Sixth Amendment right to a jury determination of guilt for a crime. That is to say, section 1170(b)(2) does not create a crime whose elements consist of some indeterminate set of aggravating facts — *any* facts at all — but only so long as those facts have been found by a jury and are deemed pertinent by a judge. If I am wrong about this, and section 1170(b)(2) has in fact created such a crime, then the Legislature has yielded to judges a truly impressive amount of its power to define crimes and their punishment. (But see *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 552 [" ' "[T]he power to define crimes and fix penalties is vested exclusively in the legislative branch." ' "]; *In re Brown* (1973) 9 Cal.3d 612, 624,

---

[2] Even accepting, for a moment, the majority's premise that the Sixth Amendment jury right attaches to any fact the sentencing court (as opposed to the Legislature) regards as dispositive in justifying an upper term sentence, the majority does not explain why other, nondispositive aggravating facts must also be submitted to the jury. (Maj. opn., *ante*, at pp. 38–39.) A trial court may cite many aggravating circumstances in imposing an upper term — indeed, here, the trial court cited eight — without regarding any individual fact as critical to its exercise of discretion. The majority never explains why these aggravating facts, too, must be regarded as "legally necessary" to the sentence, and thus subject to the Sixth Amendment jury trial requirement.

citing Pen. Code, § 6 ["Only the Legislature and not the courts may make conduct criminal."].)

But the central flaw with the majority's logic is that it never meaningfully addresses the point underlying our prior decisions in *Black II* and *Sandoval*: That "there is a fundamental difference, one underpinning [the high court's] entire *Apprendi* jurisprudence, between facts that *must* be found in order for a sentence to be lawful, and facts that individual judges *choose* to make relevant to the exercise of their discretion." (*Rita, supra*, 551 U.S. at p. 373 (conc. opn. of Scalia, J.).) Case after case has made clear that the Sixth Amendment jury right is designed to secure the historic role of the jury in determining the facts the Legislature has made essential to criminal punishment. But in the American legal tradition, the right of jury trial has not traditionally been thought to extend to the types of discretionary judicial determinations at issue in this case, regarding what sort of circumstances justify the imposition of an otherwise legally authorized sentence. (See, e.g., *Apprendi, supra*, 530 U.S. at p. 481, citing *Williams v. New York, supra*, 337 U.S. at p. 246; *Alleyne, supra*, 570 U.S. at p. 116.) Indeed, as we explained in *Sandoval*, in California, the inquiry into aggravating circumstances has historically included various kinds of cross-case comparative judgments — how serious is the defendant's crime relative to other violations of the same statute? How vulnerable was the victim? How concerning is the defendant's criminal history compared to others'? — that juries have not traditionally been tasked with, nor thought "well suited" to make. (*Sandoval, supra*, 41 Cal.4th at p. 849.)

The Legislature is of course not bound to conform to this tradition; it is entitled to take a different approach. But we

should recognize the Legislature's statutory innovation for what it is — a legislative expansion of the jury right as it has traditionally been understood — rather than attempting to squeeze it into a constitutional framework that does not fit with binding precedent.

In sum, I think the appellate courts had understood our precedent correctly: The extension of a jury right in section 1170(b)(2) as to *every* aggravating circumstance upon which a trial court relies in imposing an upper term sentence goes further than the Sixth Amendment requires. As long as a single aggravating circumstance would have been found true by the jury or admitted to by the defendant, the Sixth Amendment is satisfied. The Legislature was, of course, free to extend such a right beyond the constitutional floor. But to the extent the statute exceeds constitutional requirements, the failure to submit a particular aggravating fact to the jury is error of state law, not a violation of the federal Constitution.

## II.

Despite my disagreement with the majority's constitutional analysis, I concur in the judgment. In my view, the characterization of the jury right in section 1170(b)(2) is not determinative of the outcome of this case.

Regardless of the source of the right, the fact is that California law now guarantees a defendant the right to a jury finding on every aggravating fact cited in support of an upper term sentence. The only reason the source of the jury right has any relevance here is because California law and federal law prescribe different standards for determining whether an error in the proceedings requires reversal of the judgment. We have said that violations of state law require reversal if it is

"reasonably probable" the outcome would have been different in the absence of the error (*People v. Watson* (1956) 46 Cal.2d 818, 836), while violations of the federal Constitution require reversal if the error was not "harmless beyond a reasonable doubt" (*Chapman v. California* (1967) 386 U.S. 18, 24).

Although it is often said that the former standard is "less stringent" than the former (e.g., *People v. Hendrix* (2022) 13 Cal.5th 933, 944 (*Hendrix*)), it is a mistake to suppose that the two standards are defined by their opposition to one another. It is equally a mistake to suppose that these prejudice standards mean that the requirements of state law should, as a rule, be taken less seriously than the requirements of federal law.

The application of the *Watson* "reasonable probability" standard naturally varies with the nature of the error. Here, the error is the absence of a finding "beyond a reasonable doubt." (§ 1170(b)(2).) A reviewing court must therefore determine if it is reasonably probable that a jury would have found each additional aggravating circumstance true beyond a reasonable doubt, and if not, whether it is reasonably probable that the judge would have imposed the same sentence anyway. " ' " '[A] "probability" in this context does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.' " ' " (*Hendrix, supra,* 13 Cal.5th at p. 944.)

Here, as the majority notes, the trial court cited eight circumstances in aggravation when sentencing Lynch to the upper term: "(1) the crimes involved a high degree of cruelty, viciousness, and callousness because Lynch had struck the victim with a table leg, an extension cord, and a broomstick (see Cal. Rules of Court, rule 4.421(a)(1)); (2) the victim was particularly vulnerable (*id.*, rule 4.421(a)(3)); (3) Lynch used a

weapon when committing the crimes (*id.*, rule 4.421(a)(2)); (4) his conduct and prior record indicate a serious danger to society (*id.*, rule 4.421(b)(1)); (5) his prior convictions are numerous (*id.*, rule 4.421(b)(2)); (6) he had served prior prison terms (*id.*, rule 4.421(b)(3)); (7) he was on parole at the time he committed the crimes (*id.*, rule 4.421(b)(4)); and (8) his prior performance on parole was unsatisfactory (*id.*, rule 4.421(b)(5))." (Maj. opn., *ante*, at p. 5.) Applying the *Watson* standard of review, the Court of Appeal held that it could not "say with confidence" that a jury would find that Lynch's crimes involved a high degree of cruelty, that Lynch poses a serious danger to society, and that his victim was particularly vulnerable. I agree — and, indeed, although my colleagues disagree on other points, there is no dispute as to this one. As the Court of Appeal noted, these three aggravating circumstances involve "complicated, subjective determinations," which makes it difficult to say that there is no reasonable probability that a jury would have not found these aggravating circumstances true beyond a reasonable doubt.

The Court of Appeal found that as to the remaining five aggravating circumstances, there either was no error in proof under Penal Code section 1170, subdivision (b) or that the error was harmless under the *Watson* standard. Because there is at least one aggravating fact proved in compliance with the Sixth Amendment, there is no federal constitutional issue; the question of harmlessness depends entirely on application of *Watson*'s reasonable probability standard. The Court of Appeal concluded, and the Chief Justice agrees (dis. opn. of Guerrero, C. J., *post*, at p. 38), that there was not a reasonable probability that the trial court would have selected a lesser sentence based on these five aggravating circumstances.

17

I take a different view of how *Watson* applies in this context. As an initial matter, we must be careful about relying on a factual record made when the defendant may not have had the same "incentive and opportunity" to contest aggravating circumstances that he would have had if section 1170(b)(2) had been in effect at the time of his trial and sentencing. (*Sandoval*, *supra*, 41 Cal.4th at p. 839; see *id.* at pp. 839–840.) But even assuming that all five of the aggravating circumstances the trial court cited in this case remain valid under current law, I do not think we can say with confidence that the trial court would have imposed the same sentence had it been aware of the law's new instructions for the exercise of its sentencing discretion. The trial court, operating under the former law, cited an array of circumstances to support its decision to impose the upper term. We have no way of knowing whether the trial court would have imposed the same sentence based solely on the subset of aggravating facts that are exempt from jury-trial requirements or as to which the deprivation of a jury trial could reliably be said to be harmless. This is particularly so because the amended law creates a presumption against the upper term, whereas the trial court at the time of Lynch's sentencing had broad discretion to select among the three terms. (See maj. opn., *ante*, at pp. 10–11, 51.) Certainly the trial court *could* have imposed the same sentence. But *would* it? Perhaps so, but if there is a reasonable chance that it would not, then the error is not harmless.

As the Chief Justice notes, the trial court "specifically emphasized" Lynch's parole status and numerous prior convictions, both of which remain valid aggravating circumstances given the evidence introduced at trial. (Dis. opn. of Guerrero, C. J., *post*, at p. 37.) But it also cited all eight aggravating circumstances when stating the upper term was

appropriate. Absent a more definitive indication of intent from the trial court — for example, specifying that it would have imposed the upper term sentence based on those two aggravating circumstances alone — I do not think we can say there is no reasonable probability that the court would have exercised its discretion differently had it been aware of the law now in effect.[3]

For this reason, I agree with the majority's ultimate conclusion that the Court of Appeal's judgment must be reversed. But because I do not join in its conclusion that every violation of section 1170(b)(2)'s jury trial guarantee is also a violation of the federal Constitution, I concur in the judgment only.

**KRUGER, J.**

**I Concur:**
**JENKINS, J.**

---

[3] Even in cases that raise no concerns about which aggravating facts the sentencing court could have relied on in imposing an upper term sentence, I agree with the majority that *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390–1391 requires reversal where the record contains no clear indication that the trial court would have imposed the same upper term sentence had it been aware of the new legislative presumption against the upper term. (Maj. opn., *ante*, at pp. 53–54.)

PEOPLE v. LYNCH

S274942

Dissenting Opinion by Chief Justice Guerrero

After a jury convicted defendant Deandre Lynch of three counts of domestic violence and one count of assault against his former girlfriend, the trial court found multiple aggravating facts and sentenced Lynch to an upper term of imprisonment. The aggravating facts found by the court were Lynch's numerous prior criminal convictions; his prior prison terms; his status on parole at the time of the offenses; his poor performance on parole; the existence of a particularly vulnerable victim; Lynch's use of a weapon; the presence of a high degree of cruelty, viciousness, and callousness; and violent conduct that reflects a serious danger to society. The court found no facts in mitigation.

The majority concludes that, under California's current determinate sentencing law (DSL; Pen. Code, § 1170),[1] each of the aggravating facts found by the trial court was " 'necessary' " to the imposition of the upper term sentence on Lynch, and each is therefore covered by the Sixth Amendment's right to a jury trial. (Maj. opn., *ante*, at p. 31.) I respectfully disagree.

The Sixth Amendment guarantees a criminal defendant the right to a jury trial on any fact, except a prior conviction, that is "necessary to the imposition of an elevated sentence." (*Cunningham v. California* (2007) 549 U.S. 270, 294

---

[1]    Subsequent undesignated statutory references are to the Penal Code.

(*Cunningham*).)  In other words, "every defendant has the *right* to insist that the prosecutor prove to a jury all facts *legally essential to the punishment*."  (*Blakely v. Washington* (2004) 542 U.S. 296, 313 (*Blakely*), second italics added.)

Under the current DSL, as the majority confirms, "[o]nly a single aggravating factor is required to impose the upper term."  (*People v. Osband* (1996) 13 Cal.4th 622, 728 (*Osband*); see maj. opn., *ante*, at pp. 36–37, 59.)  In other words, "the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term." (*People v. Black* (2007) 41 Cal.4th 799, 813 (*Black II*).)  Nothing in the current DSL requires the existence of multiple aggravating facts in order to impose an upper term of imprisonment.  Even if one (or more) of the aggravating facts here had not been proven, the trial court would still have been able to legally impose the upper term on Lynch based on the remaining aggravating facts.  This circumstance distinguishes aggravating facts in this context from the elements of a criminal offense, each of which is essential.  The majority errs by conflating the two.

This court comprehensively explored these issues less than two decades ago in two companion cases, *Black II*, *supra*, 41 Cal.4th 799, and *People v. Sandoval* (2007) 41 Cal.4th 825 (*Sandoval*).  We held that "as long as a single aggravating circumstance that renders a defendant *eligible* for the upper term sentence has been established in accordance with the requirements of *Apprendi*[2] and its progeny, any additional factfinding engaged in by the trial court in selecting the

---

[2]     *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*).

appropriate sentence among the three available options does not violate the defendant's right to jury trial." (*Black II*, at p. 812.) We expressly rejected the argument that the Sixth Amendment was implicated by any additional aggravating facts used by the trial court to "justify" the upper term. (*Black II*, at p. 814.) The United States Supreme Court has likewise confirmed that the Sixth Amendment does not apply to factual findings made by a court in the course of selecting among available alternatives: "While such findings of fact may lead judges to select sentences that are more severe than the ones they would have selected without those facts, the Sixth Amendment does not govern that element of sentencing." (*Alleyne v. United States* (2013) 570 U.S. 99, 113, fn. 2 (*Alleyne*).)

The majority asserts that the requirements of the current DSL "ha[ve] overtaken the viability of *Black II* and *Sandoval* on this issue" (maj. opn., *ante*, at p. 25), but the current DSL does not change which *facts* are required to impose an upper term sentence. It does not, for example, identify any specific fact or any threshold number of facts that must be established. Instead, the current DSL changes the *manner* by which such facts must be proved. This change is significant, and it confers an important new right on criminal defendants in California. But it does not implicate the Sixth Amendment because it does not affect the facts necessary to impose an upper term. Just as in *Black II* and *Sandoval*, only a single aggravating fact is necessary under the current DSL for a trial court to impose an upper term. Thus, only a single aggravating fact must be proved in compliance with the Sixth Amendment. The majority provides no persuasive reason to depart from these precedents.

I would therefore conclude that a trial court errs under the federal Constitution only if it imposes an upper term sentence

and no aggravating facts have been proved in accordance with the Sixth Amendment. (*Sandoval, supra,* 41 Cal.4th at pp. 837–838.) If one aggravating fact has been properly proved under the Sixth Amendment, and a trial court relies on additional aggravating facts in imposing an upper term that do not meet the requirements of the current DSL, the trial court has erred, but the error implicates only state law. (See *People v. Epps* (2001) 25 Cal.4th 19, 29 (*Epps*) [denial of a state right to jury trial does not implicate the federal Constitution].) I disagree with the majority that the failure to adhere to the current DSL's jury trial requirement is automatically error under the federal Constitution as well.

An error under state law is normally reviewed under the familiar standard in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). For example, "When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper." (*People v. Price* (1991) 1 Cal.4th 324, 492 (*Price*).)

The majority concludes that the *Watson* standard is inadequate here because the current DSL identifies the middle term as the statutory maximum, absent any aggravating facts, and thereby alters the scope of the trial court's sentencing discretion. (Maj. opn., *ante,* at pp. 48–52.) The majority asserts that reversal is required in cases to which the current DSL retroactively applies unless the record clearly indicates the trial court would have imposed the same sentence had it been aware of this new constraint. The "clearly indicates" standard normally applies where there has been a substantial or dramatic change in the trial court's discretion. (See *People v. Salazar*

(2023) 15 Cal.5th 416, 426 (*Salazar*); *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).) Here, by contrast, we have already held that an analogous change in discretion was "not substantial" and would result in the same sentence "in all but the rarest of cases." (*Sandoval, supra,* 41 Cal.4th at p. 850.) The "clearly indicates" standard does not apply. The majority's embrace of this standard is unwarranted and will result in numerous remands and unnecessary sentencing proceedings where, as here, there is no reasonable probability of a different result.

For these reasons, and as explained further below, I would affirm the judgment of the Court of Appeal. Lynch concedes that one aggravating fact — his numerous prior convictions — was proved in accordance with the Sixth Amendment and the current DSL. The Court of Appeal therefore correctly held that no federal constitutional error had occurred. It further held that any state law error was harmless under *Watson* because the jury did or would have found four additional aggravating facts: Lynch's weapons use, his status on parole at the time of offenses, his poor performance on parole, and his prior prison terms. Given these facts, and the trial court's remarks at sentencing, the Court of Appeal found it was not reasonably probable the court would have selected a lesser sentence if it had applied the current DSL. I agree, and I therefore respectfully dissent from the majority's conclusion to reverse.

## I. THE SIXTH AMENDMENT AND CALIFORNIA'S CURRENT DSL

The Sixth Amendment, as applied to the states under the due process clause of the Fourteenth Amendment, guarantees the right of a criminal defendant to a trial by an impartial jury.

(*Duncan v. Louisiana* (1968) 391 U.S. 145, 149.) "Taken together," these amendments "indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " (*Apprendi*, *supra*, 530 U.S. at p. 477; accord, *Erlinger v. United States* (2024) 602 U.S. ___, ___ [144 S.Ct. 1840, 1849] (*Erlinger*).)

*Apprendi* held that the federal right to a jury trial extends not only to the elements that determine a defendant's guilt or innocence of the crime, but to any fact (except a prior conviction) that increases the potential penalty for a crime. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, *supra*, 530 U.S. at p. 490.) "[T]he relevant inquiry is one not of form, but of effect — does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" (*Id.* at p. 494.)

The relevant statutory maximum is the maximum sentence a judge "may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment' [citation], and the judge exceeds his proper authority." (*Blakely*, *supra*, 542 U.S. at p. 304; accord, *Erlinger*, *supra*, 144 S.Ct. at p. 1850.)

However, when a judge selects among alternatives, each of which is authorized by the jury's verdict, the Sixth Amendment is not implicated even if the judge is persuaded by additional facts to select the harshest available punishment. In that situation, a judge "may implicitly rule on those facts he

6

deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence — and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." (*Blakely*, *supra*, 542 U.S. at p. 309; accord, *Alleyne*, *supra*, 570 U.S. at p. 113, fn. 2.)

Under the current DSL, where a statute prescribes three possible terms of imprisonment, "the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided" in the following subdivision. (§ 1170, subd. (b)(1).) That following subdivision explains, "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id.*, subd. (b)(2).) The statute goes on to exempt a court's consideration of "the defendant's prior convictions in determining sentencing based on a certified record of conviction" from the jury trial requirement. (*Id.*, subd. (b)(3).)

I agree with the majority that "[u]nder the current statute the middle term is the maximum term that can be imposed unless additional factual determinations are made. It is the requirement of additional factfinding that brings the Sixth Amendment into play." (Maj. opn., *ante*, at p. 29.) If no aggravating facts have been proved in accordance with the Sixth Amendment, it is error under the federal Constitution for a trial court to impose a sentence exceeding the middle term. (*Blakely*, *supra*, 542 U.S. at p. 304.) Such an error is reviewable under

the *Chapman* standard for prejudice applicable to federal constitutional errors. (*Washington v. Recuenco* (2006) 548 U.S. 212, 220; see *Neder v. United States* (1999) 527 U.S. 1, 4 (*Neder*); *Chapman v. California* (1967) 386 U.S. 18, 23 (*Chapman*).)

The nature of this additional factfinding is determined by California sentencing law, which dictates what is legally required for a court to impose the upper term. "[T]he essential Sixth Amendment inquiry is whether a fact is an element of the crime. When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." (*Alleyne*, *supra*, 570 U.S. at pp. 114–115.)

Under California law, as the majority affirms, "[o]nly a single aggravating factor is required to impose the upper term." (*Osband*, *supra*, 13 Cal.4th at p. 728; see maj. opn., *ante*, at pp. 36–37, 59.) Thus, if a single aggravating fact has been proved in accordance with the Sixth Amendment (for example, by jury trial), all of the facts legally required for the upper term have been established, and the statutory maximum penalty is the upper term. A trial court that imposes the upper term in this situation does not run afoul of the Sixth Amendment because the upper term is authorized by the jury's finding of an aggravating fact. The upper term does not exceed "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (*Blakely*, *supra*, 542 U.S. at p. 303, italics omitted.) The court has not "inflict[ed] punishment that the jury's verdict alone does not allow." (*Id.* at p. 304.)

In other words, if one aggravating fact has been found in compliance with the Sixth Amendment, the jury (or judge) has

made all of the essential factual findings required to support an upper term sentence. (See *Erlinger*, *supra*, 144 S.Ct. at p. 1850.) The defendant has no "legal *right* to a lesser sentence" under California law "and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." (*Blakely*, *supra*, 542 U.S. at p. 309.)

The majority attempts to minimize the significance of a single aggravating fact by emphasizing that such a fact is only sufficient "*if*, in the court's discretion, *that circumstance alone justifies* a sentence exceeding the middle term." (Maj. opn., *ante*, at p. 36.) But this statement simply confirms that, under the current DSL, proof of a single aggravating fact exposes a defendant to the prospect of the upper term. The statute does not require any additional showing. It leaves the significance of any additional aggravating facts to the discretion of the trial court.

Because the existence of a single properly proved aggravating fact exposes a defendant to the upper term under the current DSL, the trial court's reliance on one or more additional aggravating facts to support the upper term sentence does not implicate the Sixth Amendment. Such reliance does not "increase[] the penalty for a crime beyond the prescribed statutory maximum." (*Apprendi*, *supra*, 530 U.S. at p. 490.) With proof of one aggravating fact, the statutory maximum is already the upper term. Judicial factfinding regarding additional aggravating facts cannot increase the maximum beyond that. As the high court has advised, "the relevant inquiry is one not of form, but of effect — does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" (*Id*. at p. 494.) Where the jury's verdict (or other Sixth Amendment-compliant

9

proceeding) reflects at least one aggravating fact, the trial court's consideration of additional aggravating facts does not expose the defendant to any greater punishment than already authorized, so it does not run afoul of the Sixth Amendment. As the high court recently confirmed, it is only " '[a] fact that increases' a defendant's *exposure* to punishment, whether by triggering a higher maximum *or* minimum sentence," that "must 'be submitted to a jury' and found unanimously and beyond a reasonable doubt." (*Erlinger, supra,* 144 S.Ct. at p. 1851, first italics added.)[3]

While additional facts may make it more likely a trial court will impose the upper term, the United States Supreme Court has held that such a likelihood does not create a Sixth Amendment concern. "While such findings of fact may lead judges to select sentences that are more severe than the ones they would have selected without those facts, the Sixth Amendment does not govern that element of sentencing." (*Alleyne, supra,* 570 U.S. at p. 113, fn. 2.) The high court has never held that "any fact that influences judicial discretion must be found by a jury. [It has] long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." (*Id.* at p. 116.)

Indeed, despite the additional procedural requirements in the current DSL to prove aggravating facts, the statute

---

[3] The majority is mistaken to the extent it implies *Erlinger* "confirms [its] view" of the current DSL. (Maj. opn., *ante,* at p. 32.) As relevant here, *Erlinger* reiterates the "firmly entrenched" principles in "*Apprendi* and *Alleyne,*" as well as other Sixth Amendment precedents. (*Erlinger, supra,* 144 S.Ct. at p. 1851.) The high court's precedents, including *Erlinger,* do not support the majority's conclusions.

continues to confer broad discretion on the trial court to determine the significance of those facts. The current DSL does not identify any particular aggravating fact, or any number of aggravating facts, that must be found in order to impose an upper term sentence. It therefore remains the case that only a single aggravating fact must be found in order for a trial court to impose the upper term. Because the current DSL does not identify any required fact beyond that single aggravating fact, no further showing is necessary to expose a defendant to the upper term in accordance with the Sixth Amendment.

The majority argues that "a sentencing scheme need not set out a mandatory list of aggravating facts that must be proved in every case in order for *Apprendi*'s protections to apply." (Maj. opn., *ante*, at p. 40.) It is true that a "list" is not necessary, but the scheme must identify the consequences of a given factual finding (in general or in specific) to trigger the Sixth Amendment. If a scheme leaves the consequences to the discretion of the trial court, such findings are not akin to elements of an offense and the Sixth Amendment is not implicated. (See *Erlinger*, *supra*, 144 S.Ct. at p. 1880 (dis. opn. of Jackson, J.) ["Even after *Apprendi*, a sentencing judge can still find and consider any fact — including sentencing factors defined by the legislature — so long as the consequence of that fact is not mandatory but rather left to the judge's discretion"].)

The majority asserts that, under the current DSL, "the aggravating facts that would 'justify' an upper term sentence (§ 1170, subd. (b)(2)) are the same facts that 'expose' the defendant to imposition of that sentence in the trial court's discretion. [Citation.] Stated another way, under the current statute the aggravating facts used to 'justify' an upper term sentence are 'necessary to [its] imposition,' [citation] and

effectively function like elements of a crime." (Maj. opn., *ante*, at p. 31.) These assertions are contradicted by the majority's recognition that a single aggravating fact exposes a defendant to the upper term. They confuse the available punishment with the setting of the punishment actually imposed. But, as the high court has emphasized, " '[E]stablishing what punishment is available by law and setting a specific punishment within the bounds that the law has prescribed are two different things.' " (*Alleyne*, *supra*, 570 U.S. at p. 117.) The upper term is available by virtue of a single aggravating fact. Setting the specific punishment within that statutory maximum is a matter of state law only.

The majority emphasizes that the statute requires that "*all* of the aggravating circumstances that the court actually relies on to justify the sentence" must be "proven as the statute requires." (Maj. opn., *ante*, at p. 30.) It makes much of the fact that the current DSL does not "authorize[]" a trial court to consider aggravating facts not found in compliance with its terms. (Maj. opn., *ante*, at p. 41.) These statements merely reiterate the statute's procedural requirements. If a state requirement for a jury trial on a fact, rather than the existence of a fact itself, were sufficient to implicate the Sixth Amendment, the violation of every state jury trial right would automatically violate the Sixth Amendment. But it does not. For example, criminal defendants in California enjoy a statutory right to a jury trial on the fact of prior convictions alleged as part of a sentencing enhancement or the "Three Strikes" law. (§§ 1025, 1158.) Thus, under California law, a court may not use those prior conviction allegations at sentencing unless they were admitted by the defendant or proven at trial — just like a court cannot use an aggravating fact at sentencing that was not

admitted or proven at trial under the current DSL. But, if a court nonetheless uses the prior conviction allegation at sentencing, the error is one of state law only. (*Epps*, *supra*, 25 Cal.4th at p. 29.) The same holds true for additional aggravating facts under the current DSL.[4]

It is important to recognize that the Sixth Amendment right to a jury trial exists separately from state procedural rules. The Sixth Amendment right is triggered not by a state statute that provides a jury right, but by the substantive factual showing necessary to impose a given punishment (here, the upper term). That is, the Sixth Amendment guarantees a jury trial on all necessary facts, regardless of whether the state

---

[4] To support its analysis, the majority offers an example that it believes shows how a trial court would violate the Sixth Amendment by imposing the upper term, even where one aggravating fact was proved in accordance with the Sixth Amendment. (Maj. opn., *ante*, at p. 38.) In the majority's example, despite the existence of one properly proved aggravating fact, the trial court determines that the upper term is only justified by the existence of a second aggravating fact not proved in accordance with the Sixth Amendment. (Maj. opn., *ante*, at p. 38.) The majority's example does not establish a Sixth Amendment violation. It is undisputed that such a court could have imposed the upper term given the properly proved fact. Nothing in the current DSL requires the existence of a second properly proved fact. Any such requirement is purely a matter of the trial court's discretion. Because the statute leaves the requirement of additional aggravating facts in the discretion of the trial court, they are not akin to the elements of a criminal offense and proof of such facts does not implicate the Sixth Amendment. (*Erlinger*, *supra*, 144 S.Ct. at p. 1850; *Alleyne*, *supra*, 570 U.S. at p. 113, fn. 2; *id.* at p. 117; *Blakely*, *supra*, 542 U.S. at p. 309.) Contrary to the majority's bald assertion (maj. opn., *ante*, at p. 39), the Sixth Amendment absolutely can be satisfied where the statute is not.

provides such a jury trial. If the state does not provide a jury trial right on a fact necessary to impose an upper term, the Sixth Amendment will still require it. (See, e.g., *Cunningham*, *supra*, 549 U.S. at pp. 288–289 [discussed below].) But, conversely, if the state does provide a jury trial right, it is not necessarily required by the Sixth Amendment. (See, e.g., *Epps*, *supra*, 25 Cal.4th at p. 29.) The majority errs by looking to California's procedural requirements, rather than its substantive law, to determine the sweep of the Sixth Amendment under the current DSL.

## II. *BLACK II* AND *SANDOVAL*

Although the foregoing discussion is based on United States Supreme Court precedents, as noted this court came to the same conclusions in *Black II*, *supra*, 41 Cal.4th 799, and *Sandoval*, *supra*, 41 Cal.4th 825. *Black II* and *Sandoval* cannot be reconciled with the majority's reasoning in this matter. Among other things, they specifically foreclose the majority's reliance on the requirement in the current DSL that the facts "justify" an upper term sentence (§ 1170, subd. (b)(2)) to find a Sixth Amendment violation whenever a trial court relies on a noncompliant fact. (*Black II*, at pp. 814–815; see *Sandoval*, at pp. 850–851.)

This court decided *Black II* and *Sandoval* in the wake of *Cunningham*, *supra*, 549 U.S. 270, in which the high court held that California's original DSL violated the Sixth Amendment. The original DSL, like the current DSL, identified the middle term of imprisonment as the statutory maximum: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term . . . ." (Former § 1170, subd. (b); Stats. 2004,

ch. 747, § 1.) The original DSL allowed a court to depart from the middle term only if "there are circumstances in aggravation or mitigation of the crime." (Former § 1170, subd. (b).) It identified various sources of information that a court could consider "[i]n determining whether there are circumstances that justify imposition of the upper or lower term." (*Ibid.*) The original DSL empowered the trial court, rather than a jury, to find circumstances in aggravation or mitigation.

Former rule 4.420 of the California Rules of Court reiterated these requirements.[5] It confirmed, "The middle term must be selected unless imposition of the upper or lower term is justified by circumstances in aggravation or mitigation." (Former rule 4.420(a).) "Circumstances in aggravation and mitigation must be established by a preponderance of the evidence. Selection of the upper term is justified only if, after a consideration of all the relevant facts, the circumstances in aggravation outweigh the circumstances in mitigation. . . . Selection of the lower term is justified only if, considering the same facts, the circumstances in mitigation outweigh the circumstances in aggravation." (Former rule 4.420(b).)

*Cunningham* reviewed these provisions and provided the following summary: "In sum, California's DSL, and the Rules governing its application, direct the sentencing court to start with the middle term, and to move from that term only when the court itself finds and places on the record facts — whether

---

[5] "The rules have the force of statute to the extent that they are not inconsistent with legislative enactments and constitutional provisions." (*In re Richard S.* (1991) 54 Cal.3d 857, 863.) Subsequent rule references are to the California Rules of Court.

related to the offense or the offender — beyond the elements of the charged offense." (*Cunningham*, *supra*, 549 U.S. at p. 279.)

*Cunningham* went on to explain why the original DSL violated the Sixth Amendment's right to a jury trial: "Under California's DSL, an upper term sentence may be imposed only when the trial judge finds an aggravating circumstance. . . . In accord with *Blakely*, therefore, the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum. [Citation.] Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt [citation], the DSL violates *Apprendi*'s bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " (*Cunningham*, *supra*, 549 U.S. at pp. 288–289.)

*Black II* and *Sandoval* considered the consequences of *Cunningham*'s Sixth Amendment holding for defendants sentenced under the original DSL. In *Black II*, we summarized the pertinent principles from the United States Supreme Court's precedents: "[U]nder the line of high court decisions beginning with *Apprendi*, *supra*, 530 U.S. 466, and culminating in *Cunningham*, *supra*, 549 U.S. 270 . . . , the constitutional requirement of a jury trial and proof beyond a reasonable doubt applies only to a fact that is 'legally essential to the punishment' [citation], that is, to 'any fact that exposes a defendant to a greater potential sentence' than is authorized by the jury's verdict alone [citation]. 'The Sixth Amendment question, the Court has said, is whether the law *forbids* a judge to increase defendant's sentence *unless* the judge finds facts that the jury

did not find (and the offender did not concede).' " (*Black II*, *supra*, 41 Cal.4th at p. 812; accord, *Sandoval*, *supra*, 41 Cal.4th at pp. 838–839.)

"Accordingly, so long as a defendant is *eligible* for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury." (*Black II*, *supra*, 41 Cal.4th at p. 813; accord, *Sandoval*, *supra*, 41 Cal.4th at p. 839.) "The facts upon which the trial court relies in exercising discretion to select among the terms available for a particular offense 'do not pertain to whether the defendant has a legal *right* to a lesser sentence — and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.' " (*Black II*, at p. 813, quoting *Blakely*, *supra*, 542 U.S. at p. 309.)

*Black II* cited the long-standing rule, affirmed by the majority again today, that "the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term." (*Black II*, *supra*, 41 Cal.4th at p. 813.) It went on to directly answer the question presented here: "Therefore, if one aggravating circumstance has been established in accordance with the constitutional requirements set forth in *Blakely*, the defendant is not 'legally entitled' to the middle term sentence, and the upper term sentence is the 'statutory maximum.' " (*Ibid*.)

As noted, the majority acknowledges that a single aggravating fact empowers a court to impose an upper term sentence, but it contends that "[w]hen the trial court *actually relies* on improperly proven aggravating facts to 'justify' an upper term sentence, a Sixth Amendment violation occurs and *Chapman* must be satisfied." (Maj. opn., *ante*, at p. 31.) The defendant in *Black II* made the same argument, since the original DSL, like the current DSL, allowed imposition of an upper term only if the facts in aggravation *justified* the upper term. It was soundly rejected.

Specifically, the *Black II* defendant argued that "the existence of a single aggravating circumstance does not make a defendant eligible for the upper term under [the original DSL], because '[s]election of the upper term is justified only if, after a consideration of all the relevant facts, the circumstances in aggravation outweigh the circumstances in mitigation.' ([Former] rule 4.420(b).) Although a single aggravating circumstance may warrant an upper term in some cases, defendant argues, a court cannot impose the upper term unless it determines that any aggravating circumstances are of sufficient weight to justify the upper term and outweigh any mitigating circumstances, and unless the court makes this determination by considering all of the aggravating circumstances. . . . Thus, defendant argues, if only one of several aggravating circumstances considered by the trial court has been established pursuant to Sixth Amendment requirements, and the upper term sentence is selected, the court has imposed 'punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment" [citation], and the judge exceeds his proper authority.'" (*Black II*, *supra*, 41 Cal.4th at p. 814.)

We rejected this argument because the high court's precedents "do not prohibit a judge from making the factual findings that lead to the selection of a particular sentence." (*Black II, supra,* 41 Cal.4th at p. 814.) "The issue to be determined in each case is whether the trial court's factfinding increased the sentence that otherwise *could* have been imposed, not whether it raised the sentence above that which otherwise *would* have been imposed." (*Id.* at p. 815.)

We explained that "under the DSL the presence of one aggravating circumstance renders it lawful for the trial court to impose an upper term sentence. [Citations.] The court's factual findings regarding the existence of additional aggravating circumstances may increase the likelihood that it actually will impose the upper term sentence, but these findings do not themselves further raise the authorized sentence beyond the upper term." (*Black II, supra*, 41 Cal.4th at p. 815.)

The same holds true under the current DSL. A single aggravating fact is sufficient to expose a defendant to the upper term. If such a fact has been proved in accordance with the Sixth Amendment, the trial court's actual reliance on additional facts to justify the upper term does not expose the defendant to any greater punishment than the upper term, so the trial court's use of such facts does not violate the Sixth Amendment.

The majority attempts to distinguish *Black II* on several grounds, but none is persuasive. First, the majority states, "The current statute does not follow the blueprint provided in *Black II*. It does not speak in terms of a single aggravating factor making the defendant 'eligible' for an upper term sentence." (Maj. opn., *ante*, at p. 30.) But the original DSL did not speak in such terms either. The concepts described in

19

*Black II* flow from the substantive requirements of California law regarding a single aggravating fact, which the majority acknowledges are unchanged. On this point, the majority claims that the current statute "is functionally different" from the original DSL because under the current statute "the court may [impose the upper term] 'only' if it determines 'in its sound discretion,' that a single aggravating circumstance 'justif[ies]' the upper term." (Maj. opn., *ante*, at p. 37.) But the original DSL operated in the same way. A court could impose the upper term only if it was *justified* by the aggravating facts. (*Black II*, *supra*, 41 Cal.4th at p. 814; former § 1170, subd. (b); Stats. 2004, ch. 747, § 1; former rule 4.420(a)–(b).) The high court itself recognized this requirement. (*Cunningham*, *supra*, 549 U.S. at p. 278.) It does not distinguish the original DSL from the current DSL, and it does not undermine *Black II*'s Sixth Amendment holding.

The majority also asserts that the current DSL does not "preserve the two-tiered approach discussed in *Black II* [citation] authorizing the trial court to make factual determinations as to aggravating facts (other than prior convictions) to justify an upper term sentence. Absent stipulation or waiver, that factfinding role now resides solely with the jury." (Maj. opn., *ante*, at p. 30.) Again, the original DSL did not set forth a two-tiered approach either. It was and is a function of the substantive requirements of California sentencing law. The first aggravating fact has a significance that additional aggravating facts do not. Crucially, this circumstance is not some quirk of California law. The United States Supreme Court has repeatedly distinguished between facts that are legally required to expose a defendant to a given punishment and additional facts that increase the likelihood

20

that such a punishment is imposed. The Sixth Amendment right to a jury trial attaches to the former, but not the latter. (*Alleyne*, *supra*, 570 U.S. at p. 113, fn. 2; *id.* at pp. 116–117; *Blakely*, *supra*, 542 U.S. at p. 309; *Apprendi*, *supra*, 530 U.S. at p. 481; see *Dillon v. United States* (2010) 560 U.S. 817, 828–829.)[6]

It is true that the current DSL requires a jury finding on both the first and any additional aggravating facts used to justify the imposition of an upper term, but this requirement merely reflects the current DSL's new jury trial right. It is undisputed that the current DSL creates such a right. The question is whether such a right is required by the federal Constitution as well. It is not.

## III. *CUNNINGHAM* AND LEGISLATIVE INTENT

To support its conclusion that "the Sixth Amendment jury trial right attaches to every aggravating fact, other than a prior conviction, used to justify imposition of the upper term," the majority looks to the legislative history of the current DSL.

---

[6] The majority claims that "the high court's precedents make clear" that "a jury trial is required on 'fact[s]' that are used to justify a sentence in excess of the middle term." (Maj. opn., *ante*, at p. 42.) But, as detailed above, the high court's precedents are directly to the contrary. The high court has disclaimed the principle that "any fact that influences judicial discretion must be found by a jury." (*Alleyne*, *supra*, 570 U.S. at p. 116.) Once a defendant is eligible for a given sentence, a trial court may rely on additional facts to justify its decision to impose the sentence without violating the Sixth Amendment. "While such findings of fact may lead judges to select sentences that are more severe than the ones they would have selected without those facts, the Sixth Amendment does not govern that element of sentencing." (*Alleyne*, at p. 113, fn. 2.)

(Maj. opn., *ante*, at p. 43.)  It quotes a statement by the bill's author that " '[i]t is important, proper, and constitutionally conforming to change the law to ensure that aggravating facts are presented to the jury before a judge imposes a maximum sentence as decided in *Cunningham v. California.*' "  (Assem. Floor Analysis, 3d reading analysis of Sen. Bill No. 567 (2021–2022 Reg. Sess.) as amended Sept. 3, 2021, p. 2.)  The majority emphasizes the phrase " ' "*constitutionally conforming*" ' " in its quotation (maj. opn., *ante*, at p. 43), but it does not have the significance the majority attributes to it.  The majority appears to believe that "[t]he Legislature was acting to remedy a Sixth Amendment violation" with the current DSL.  (Maj. opn., *ante*, at p. 43.)  But the prior DSL, which was in existence when Lynch was sentenced, did not violate the Sixth Amendment.  Moreover, it is undisputed that the current DSL is "constitutionally conforming," i.e., it does not violate the Sixth Amendment.  The question is whether it goes *beyond* the requirements of the Sixth Amendment to establish a purely state law jury trial right on additional aggravating facts.  The phrase "constitutionally conforming" does not speak to that question.

The majority also highlights the bill author's reference to *Cunningham*.  (Maj. opn., *ante*, at pp. 43–44.)  After finding California's original DSL unconstitutional, the high court left open the appropriate remedy.  (*Cunningham*, *supra*, 549 U.S. at p. 293.)  It noted that other states had "modified their systems in the wake of *Apprendi* and *Blakely* to retain determinate sentencing.  They have done so by calling upon the jury — either at trial or in a separate sentencing proceeding — to find any fact necessary to the imposition of an elevated sentence.  As earlier noted, California already employs juries in this manner to determine statutory sentencing enhancements.   [Citation.]

Other States have chosen to permit judges genuinely 'to exercise broad discretion . . . within a statutory range,' which, 'everyone agrees,' encounters no Sixth Amendment shoal. [Citation.] California may follow the paths taken by its sister States or otherwise alter its system, so long as the State observes Sixth Amendment limitations declared in this Court's decisions." (*Id.* at p. 294, fns. omitted.)

The majority characterizes the prior DSL, in effect at the time of Lynch's sentencing, as reflecting *Cunningham*'s second option, "permit[ting] judges genuinely 'to exercise broad discretion . . . within a statutory range.' " (*Cunningham, supra,* 549 U.S. at p. 294; see maj. opn., *ante,* at p. 43.) Under the prior DSL, the trial court had broad discretion to impose the lower, middle, or upper term. The prior DSL did not require the finding of any aggravating fact to impose the upper term. The jury's verdict on the underlying offense was sufficient.

By contrast, the majority characterizes the current DSL as reflecting *Cunningham*'s first option, "calling upon the jury — either at trial or in a separate sentencing proceeding — to find any fact necessary to the imposition of an elevated sentence." (*Cunningham, supra,* 549 U.S. at p. 294; see maj. opn., *ante,* at p. 43.) I agree, but this recognition does not resolve the matter. It merely raises again the primary issue in dispute: What is "any fact *necessary* to the imposition of an elevated sentence" under the current DSL? (*Cunningham,* at p. 294, italics added.)

I have no doubt that the Legislature in the current DSL intended to require a jury trial (or other Sixth Amendment-compliant proceeding) on every aggravating fact used to justify an upper term sentence. But this intent does not and cannot

determine whether such a right is mandated by the federal Constitution as well. The Sixth Amendment right to a jury trial is implicated only by the facts legally required to expose a defendant to an upper term sentence. (*Cunningham*, *supra*, 549 U.S. at p. 281; *Blakely*, *supra*, 542 U.S. at p. 313.) Under California law, any single aggravating fact is sufficient. It is therefore only a single aggravating fact that must be proved in accordance with the Sixth Amendment. Additional aggravating facts must be proved in accordance with the current DSL, but a court's failure to adhere to its requirements is an error under state law only.

## IV.  *GUTIERREZ* AND *SALAZAR*

An error under state law normally requires reversal only when a reviewing court concludes "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, *supra*, 46 Cal.2d at p. 836.) " ' " 'We have made clear that a "probability" in this context does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.' " ' " (*People v. Hendrix* (2022) 13 Cal.5th 933, 944.)

We have held that the *Watson* inquiry may be inadequate where an ameliorative statute or intervening judicial decision confers new or significantly altered discretion on a sentencing court to select among available sentencing options. For example, in *Gutierrez*, *supra*, 58 Cal.4th 1354, this court considered the scope of a trial court's discretion to impose a sentence of life imprisonment without parole on juvenile defendants under section 190.5, subdivision (b). We overturned the established understanding of the statute, which "[f]or two decades, the Courts of Appeal [had] uniformly interpreted . . . as

establishing a presumption in favor of life without parole for juvenile offenders who were 16 years of age or older when they committed special circumstance murder." (*Gutierrez*, at p. 1369.) We concluded that under recent United States Supreme Court precedent regarding the punishment of juvenile defendants, "a sentence of life without parole under section 190.5(b) would raise serious constitutional concerns if it were imposed pursuant to a statutory presumption in favor of such punishment." (*Id.* at p. 1379.) We therefore held that courts should exercise their discretion under the statute "with no presumption in favor of life without parole." (*Id.* at p. 1387.) In addition, "the trial court must consider all relevant evidence bearing on the 'distinctive attributes of youth' . . . and how those attributes 'diminish the penological justifications for imposing the harshest sentences on juvenile offenders' " under the high court's precedents. (*Id.* at p. 1390.)

Because *Gutierrez* significantly departed from the prior understanding of a trial court's discretion, this court determined that "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' [Citations.] Although the trial courts in these cases understood that they had some discretion in sentencing, the records do not clearly indicate that they would have imposed the same sentence had they been aware of the full scope of their discretion. Because the trial courts operated under a governing presumption in favor of life without parole, we cannot say with confidence what sentence they would have imposed absent the presumption." (*Gutierrez, supra*, 58 Cal.4th at p. 1391.)

We applied this "clearly indicates" standard more recently in *Salazar, supra,* 15 Cal.5th 416. The defendant in *Salazar* had been sentenced under the same version of the DSL in effect when Lynch was sentenced, which conferred broad discretion on a trial court to select among the lower, middle, or upper terms of imprisonment for an offense. (*Salazar*, at p. 426.) A new statute "dramatically restrains that discretion to impose the middle or upper term, now *requiring* the court to impose the lower term if a qualifying trauma was a contributing factor in the commission of the offense 'unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice.' [Citation.] Accordingly, under the new law, the presumption is that the court '*shall* order imposition of the lower term' whenever the defendant has a qualifying trauma." (*Id.* at pp. 426–427, quoting § 1170, subd. (b)(6).) We held that because the *Salazar* defendant may have suffered a qualifying trauma, and the sentencing court "was not fully aware of the scope of its discretionary powers, 'the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*Salazar*, at p. 425.)

The majority reviews *Gutierrez* and *Salazar* and examines several opinions from the Courts of Appeal that have applied the "clearly indicates" standard to the retrospective application of the current DSL. (Maj. opn., *ante*, at pp. 48–51.) The majority observes that, contrary to these opinions, the Court of Appeal below declined to apply *Gutierrez*. (*Id.* at p. 51.) The majority concludes that was error. In a brief discussion, the majority states that "the amendment at issue did alter the trial court's

26

sentencing discretion" because its "changes circumscribe the trial court's previously broad discretion to select whichever of the three terms of imprisonment serves the interests of justice." (*Id.* at p. 51.) The majority therefore concludes the *Gutierrez* standard applies. (*Id.* at pp. 51–52.)

The majority's reasoning is not persuasive. *Gutierrez* and *Salazar* involved such substantial shifts in discretion that it was truly speculative to ask what a trial court might have done in response. *Gutierrez* eliminated a decades-long presumption in favor of life imprisonment without parole and announced new factors based on the federal Constitution that a trial court must consider before imposing such a sentence. (*Gutierrez*, *supra*, 58 Cal.4th at pp. 1390–1391.) *Salazar* interpreted a new law that "dramatically restrain[ed]" the trial court's sentencing discretion by imposing a new presumption in favor of the lower term, unless the imposition of the lower term was contrary to the interests of justice. (*Salazar*, *supra*, 15 Cal.5th at p. 426.)

The current DSL's effect on a trial court's discretion is comparatively quite minor. It does not involve the same qualitative shifts as in *Gutierrez* and *Salazar*. Under the prior DSL, in force when Lynch was sentenced, a trial court had broad discretion to impose the lower, middle, or upper term. (Former § 1170, subd. (b), enacted by Stats. 2007, ch. 3, § 2, pp. 6−7.) The court was empowered to "select the term which, in the court's discretion, best serve[d] the interests of justice." (*Ibid.*) The applicable Rules of Court advised, "In exercising his or her discretion in selecting one of the three authorized terms of imprisonment referred to in section 1170(b), the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision." (Former rule 4.420(b).) The current DSL allows the

same consideration of circumstances in aggravation or mitigation, it establishes a presumption in favor of the middle or lower term, and it allows imposition of the upper term "only when there are circumstances in aggravation of the crime that justify" the upper term. (§ 1170, subd. (b)(2); *id.*, subd. (b)(1).)

In *Sandoval, supra,* 41 Cal.4th 825, this court considered the significance of a nearly identical change, but in reverse. As discussed, the original DSL established a presumption in favor of the middle term and allowed imposition of the upper term only if justified by the circumstances in aggravation. (The original DSL also allowed the imposition of the *lower* term only if justified by the circumstances in mitigation.) *Sandoval* considered a shift from the original DSL to a fully discretionary sentencing scheme, akin to the prior DSL that was in effect when Lynch was sentenced.[7]

Although the middle term presumption in the original DSL was " 'worded in mandatory language, the requirement that an aggravating factor exist is merely a requirement that the decision to impose the upper term be *reasonable.*' " (*Sandoval, supra,* 41 Cal.4th at p. 850.) Thus, although the prior DSL in effect when Lynch was sentenced eliminated this

---

[7] To be precise, the fully discretionary scheme this court considered in *Sandoval* was the Attorney General's proposal to reform the original DSL in light of *Cunningham,* but "the California Legislature amended the DSL in substantially the same manner proposed by the Attorney General," so its reasoning applies equally to the prior, post-*Cunningham* DSL applied by the trial court below. (*Sandoval, supra,* 41 Cal.4th at p. 845.) *Sandoval* explicitly equated "the procedure proposed by the Attorney General" with the post-*Cunningham* DSL "adopted independently by the Legislature." (*Sandoval,* at p. 846.)

presumption, *Sandoval* held that, "in practical terms, the difference between the pre-*Cunningham* provision of the DSL enacted by the Legislature and a statutory scheme in which the trial court has broad discretion to select among the three available terms is *not substantial*. It seems likely that in all but the rarest of cases the level of discretion afforded the trial court under [a fully discretionary scheme] would lead to the same sentence as that which would have been imposed under the DSL as initially enacted." (*Sandoval*, at p. 850, italics added.) We later reiterated the same point: "[A]s noted above, the difference in the amount of discretion exercised by the trial court in selecting the upper term under the [original] DSL, as compared to [a fully discretionary scheme] is not substantial." (*Id.* at p. 855.)

The same logic holds true here, where the shift is from a fully discretionary sentencing scheme to the current DSL's maximum middle term presumption. Under the prior DSL's fully discretionary scheme, the trial court was tasked with considering the aggravating and mitigating facts and imposing a reasonable sentence. Where, as here, a trial court imposes the upper term, the trial court believes the upper term is more appropriate in light of those facts than the middle or lower term. Likewise, under the current DSL, a trial court may impose the upper term only if it believes one or more circumstances in aggravation justify the upper term. The calculus for the trial court in each circumstance is almost identical.

Indeed, the transcript of the sentencing proceedings in this case reflects that the trial court considered the middle term to be the default, in the same manner as the current DSL instructs. The court weighed the circumstances in aggravation against the lack of circumstances in mitigation and found that

the upper term was "appropriate." The court disagreed with Lynch's counsel that "there's no cause to deviate upward from the mid term in this case." Under these circumstances, the presumption not to exceed the middle term in the current DSL would have little effect on a court's discretionary decision to impose the upper term. The majority's bare reliance on this presumption, without considering its significance, elevates form over substance, and it is unpersuasive.

This matter does not involve a situation where "the sentencing court was not aware of the scope of its discretionary powers at sentencing." (*Salazar, supra*, 15 Cal.5th at p. 425; see *Gutierrez, supra*, 58 Cal.4th at pp. 1390–1391.) Nor is this a situation where no " 'discretionary decision was made in the first place.' " (*Salazar*, at p. 425.) A trial court imposing the upper term under the prior DSL has exercised its discretion and selected the most appropriate sentence in light of the aggravating and mitigating factors. A trial court imposing the upper term under the current DSL has made essentially the same discretionary choice. It has concluded the upper term is justified by one or more aggravating factors.

Because any differences between the two schemes are "not substantial" and they will result in the same sentence "in all but the rarest of cases" (*Sandoval, supra*, 41 Cal.4th at p. 850), the *Watson* standard appropriately balances the interest in identifying such rare cases against the interest in avoiding the delay and expense of unnecessary resentencing proceedings. In those cases where a reviewing court believes there is a reasonable probability the trial court would have exercised its discretion differently under the current DSL, it should reverse and remand for resentencing. But if there is no reasonable probability of a different result, a reviewing court should affirm.

## V.  LYNCH'S APPEAL

As noted at the outset, the trial court here found eight aggravating facts and no mitigating facts.  Based on these findings, the court sentenced Lynch to an upper term of imprisonment.  At the sentencing hearing, the court specifically emphasized two aggravating facts as the basis for imposing the upper term:  Lynch's parole status at the time of the offenses and his numerous prior adult convictions.

Because the current DSL was not yet in effect at the time of Lynch's sentencing, the trial court did not comply with its provisions.  The consequences of this noncompliance — the retrospective "error" — depend on the nature of the right of which Lynch was deprived.  If an error affects only Lynch's rights under California law, its prejudicial effect is generally reviewed under *Watson*.  But if an error affects Lynch's rights under the federal Constitution, the harmless error standard in *Chapman* applies.  (See maj. opn., *ante*, at pp. 22–23.)

Lynch concedes that one aggravating fact, his numerous prior convictions, was proved in accordance with the Sixth Amendment and the current DSL.  Based on the jury's verdict and this aggravating fact, the trial court had the discretion to sentence Lynch to the upper term under the current DSL.  The upper term is the statutory maximum for purposes of *Apprendi* because it was legally available based on facts established in compliance with the Sixth Amendment.  (See *Blakely*, *supra*, 542 U.S. at p. 303.)  The trial court did not violate the Sixth Amendment by sentencing Lynch to this statutory maximum.  Nor did the trial court violate the Sixth Amendment by considering additional facts to justify the imposition of the upper term.  While these factual findings may have persuaded the

31

court to impose the upper term, "the Sixth Amendment does not govern that element of sentencing" because the upper term was already available based on facts properly proved. (*Alleyne, supra,* 570 U.S. at p. 113, fn. 2.) In my view, therefore, Lynch's concession that one aggravating fact was proved in accordance with the Sixth Amendment forecloses any claim of error under the federal Constitution. Because Lynch has not shown any federal constitutional error, there is no need to consider harmlessness under *Chapman.*[8]

---

[8] If *no* aggravating facts had been proved in accordance with the Sixth Amendment, the statutory maximum under the current DSL would be the middle term. The trial court would violate the Sixth Amendment by imposing the upper term based on facts not properly established under the federal Constitution. In *Sandoval,* this court discussed the application of the *Chapman* harmless error test in this context. Because California law requires only a single aggravating fact to authorize an upper term sentence, the federal harmless error inquiry focuses on the possibility of proper proof of that fact: "[I]f a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury, the Sixth Amendment error properly may be found harmless." (*Sandoval, supra,* 41 Cal.4th at p. 839.)

I note that, even under the majority's view that every fact used to justify an upper term sentence must be proved in accordance with the Sixth Amendment, its application of *Chapman* appears incomplete. The majority states, "Lynch is entitled to a reversal and remand for resentencing unless, after examining the entire cause, including the evidence as to all relevant circumstances (*People v. Aledamat* (2019) 8 Cal.5th 1, 13), we can conclude that the omission of a jury trial was harmless beyond a reasonable doubt as to *every* aggravating fact

the trial court used to justify an upper term sentence." (Maj. opn., *ante*, at p. 55; see *id.* at p. 44.)

While I agree that such a conclusion would render any error harmless, the majority does not explain why this harmless error inquiry must cover *every* aggravating fact. Unlike the elements of a crime at issue in *Aledamat*, an upper term sentence does not require proof of every aggravating fact identified by the trial court. The trial court could legally impose the upper term based on a subset of aggravating facts. As the majority acknowledges, "The court retains its discretion to impose an upper term sentence if it concludes that *one or more* properly proved circumstances justify such a sentence." (Maj. opn., *ante*, at p. 59, italics added.) In my view, even under the majority's conception of the Sixth Amendment, any federal constitutional error would also be harmless if (1) a reviewing court could conclude beyond a reasonable doubt that the trial court would still have imposed the upper term if the improperly proved aggravating facts were excluded or (2) a reviewing court could conclude beyond a reasonable doubt that one or more of the improperly proved aggravating facts would have been found by a jury and the trial court would still have imposed the upper term based on those facts, combined with any properly proved aggravating facts.

The majority responds by analogizing the absence of a jury finding on an aggravating fact to the absence of a jury finding on an element of an offense. (See maj. opn., *ante*, at p. 45, fn. 18, citing *Neder*, *supra*, 527 U.S. at pp. 16–19.) But, as explained above, the majority provides no justification for such equivalence. Even if one aggravating fact is absent, a court may still impose the upper term based on one or more remaining aggravating facts. The same is not true for elements of an offense. Any harmless error analysis must account for this difference, even under the majority's conception of the Sixth Amendment's requirements.

Although the majority rejects Lynch's bid for automatic reversal, it sets up a standard of review that would require reversal even if a reviewing court is confident beyond a

Like the Court of Appeal below, I conclude the aggravating fact of weapons use was also proved in compliance with the Sixth Amendment and the current DSL.  The instructions provided to the jury identified each offense by date and the weapon used by Lynch to commit the offense.  The instructions cautioned, "Evidence that the defendant may have committed the alleged offense on another day or in another manner is not sufficient for you to find him guilty of the offense charged."  The instructions therefore required the jury to find that Lynch committed the offenses in the "manner" described in the instructions, and the jury's guilty verdicts show it necessarily found that each offense "result[ed] from the use of" the weapon specified.

The Court of Appeal found the remaining six aggravating facts had not been proved in accordance with the Sixth Amendment and the current DSL.  Three of these facts were related to Lynch's recidivism:  his prior prison terms; his status on parole at the time of offenses; and his poor performance on parole.  This court has held that such recidivism-related facts fall within the prior conviction exception to the Sixth Amendment jury trial right.  (*People v. Towne* (2008) 44 Cal.4th 63, 79, 82.)  As the majority explains, we will examine the scope of this exception in the context of the current DSL in *People v. Wiley* (2023) 97 Cal.App.5th 676, review granted March 12, 2024, S283326.  (Maj. opn., *ante*, at p. 55, fn. 20.)  Such an examination is unnecessary here because, even assuming the prior conviction exception does not apply, I agree with the Court

reasonable doubt that the Sixth Amendment error would not affect the trial court's ultimate sentencing decision. This unduly strict view is unwarranted and unsupported.

of Appeal that any error in not submitting the six remaining aggravating facts to the jury was harmless.

Again, because at least one (and actually two) aggravating facts were proved in accordance with the Sixth Amendment, the trial court's selection of the upper term — even based on additional aggravating facts — was not an error under the federal Constitution. The current DSL requires a jury trial (or other Sixth Amendment-compliant proceeding) on the additional aggravating facts, but that right is founded in state law only. "When a state need not provide a jury trial at all, it follows that the erroneous denial of that right does not implicate the federal Constitution. [Citations.] Moreover, because the error is purely one of state law, the *Watson* harmless error test applies." (*Epps, supra,* 25 Cal.4th at p. 29.)

As noted, under *Watson,* reversal is required only if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson, supra,* 46 Cal.2d at p. 836.) The relevant result here is the imposition of the upper term. Thus, reversal is not required unless it is reasonably probable that the trial court would have imposed the middle or lower term if it had followed the current DSL and afforded Lynch a jury trial right on the six remaining aggravating facts. In this context, a reviewing court must undertake two related inquiries. First, it must assess the likelihood that a jury would have made a different finding on the aggravating circumstance if it had been submitted to the jury for decision. (Cf. *Epps, supra,* 25 Cal.4th at p. 29.) Second, it must assess the consequences of the trial court's reliance on any circumstance a jury would not have found. (Cf. *Price, supra,* 1 Cal.4th at p. 492.)

Some courts have described these two inquiries using *Watson*'s "reasonably probable" language. For example, one Court of Appeal held that the first inquiry should ask "whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt" and the second inquiry should ask "whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps." (*People v. Dunn* (2022) 81 Cal.App.5th 394, 410, review granted Oct. 12, 2022, S275655.) While this framework may be useful as a starting point, it risks missing the proverbial forest for the trees. The first inquiry, covering what a jury would have found, cannot be viewed in isolation, with its results simply providing the basis for the second inquiry. The relative likelihood that the aggravating fact would be found must carry through to the end. An aggravating fact strongly supported by the evidence will carry more weight when considering the overall outcome than an aggravating fact weakly supported by the evidence, even if in both cases there may be no reasonable probability the jury would have rejected it outright. Courts should also keep in mind the difficulty in assessing how a hypothetical jury trial would play out. (See *Sandoval, supra*, 41 Cal.4th at pp. 839–840.)

Here, however, it is unnecessary to delve too deeply into these nuances. As the Court of Appeal found, the three remaining recidivism-related aggravating facts were supported by strong and undisputed evidence: "Defendant's prior prison terms were established by certified records of prior convictions, and defendant's parole status and poor performance on parole were established by the probation report, based on official

records. [Citation.] Defendant did not challenge these facts, despite having the opportunity to mitigate his sentence by doing so. Had the official records been wrong, there would have been no strategic reason for defendant not to point out the error."

Even assuming a jury would not have found true the final three aggravating facts (the existence of a particularly vulnerable victim; the presence of a high degree of cruelty, viciousness, and callousness; and violent conduct that reflects a serious danger to society), there is no reasonable probability the trial court would have imposed the lower or middle term if it had complied with the current DSL and those facts had been rejected. Five aggravating facts remain, all either found in compliance with the current DSL or supported by strong and undisputed evidence, and there are no mitigating facts. The two aggravating facts that the trial court specifically emphasized at sentencing (parole status and numerous prior convictions) remain valid. There is no reasonable probability that the absence of three of the eight aggravating facts considered by the trial court would have changed the court's conclusion that the upper term was appropriate. Any error under the current DSL in failing to provide Lynch the right to a jury trial on these aggravating facts was therefore harmless.[9]

---

[9] In addition, the record does not suggest that this case is one of "the rarest of cases" (*Sandoval, supra,* 41 Cal.4th at p. 850) in which the new maximum middle term presumption would materially affect the trial court's decision to impose the upper term. As noted, the trial court already treated the middle term as the default, and it disagreed with defense counsel that "there's no cause to deviate upward from the mid term in this case." It found the upper term "appropriate" in light of the substantial aggravating facts and lack of any mitigating facts.

The concurring and dissenting opinion expresses uncertainty regarding how the trial court would have applied the current DSL. (Conc. & dis. opn., *ante*, at pp. 18–19.) While nothing is certain, I believe the salient aspects of the record — five strong aggravating facts, no mitigating facts, and the sentencing hearing transcript — show there is no reasonable probability the trial court would have sentenced Lynch to anything other than the upper term. Remand is therefore unwarranted.

In sum, applying the current DSL retroactively to Lynch's sentencing, the trial court did not err under the Sixth Amendment in selecting the upper term because every fact necessary under California law to expose Lynch to the upper term had been proved in compliance with the Sixth Amendment. To the extent the court erred under the current DSL by not providing Lynch with the right to a jury trial on the six aggravating facts not proved in compliance with the current DSL, any error was harmless because Lynch has not shown a reasonable probability that the trial court would have selected the middle or lower term if it had submitted those facts to a jury and sentenced Lynch thereafter. I would therefore affirm the judgment of the Court of Appeal, which reached the same conclusions.

**GUERRERO, C. J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Lynch

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP opn. filed 5/27/22 – 3d Dist.
**Rehearing Granted**

_____

**Opinion No.** S274942
**Date Filed:** August 1, 2024

_____

**Court:**  Superior
**County:**  Sacramento
**Judge:**  Geoffrey A. Goodman

_____

**Counsel:**

Jacquelyn Larson, under appointment by the Supreme Court, and Joy A. Maulitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Molly O'Neal, Public Defender (Santa Clara), David Epps, Alternate Public Defender, Brian Matthews, Deputy Alternate Public Defender, Ellen McDonnell, Public Defender (Contra Costa), and Gilbert Rivera, Deputy Public Defender, for California Public Defenders Association as Amicus Curiae on behalf of Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill, Catherine Chatman, Rachelle A. Newcomb and Erin Doering, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jacquelyn Larson
Attorney at Law
2150 River Plaza Drive, Suite 300
Sacramento, CA 95833
(916) 441-3792

Erin Doering
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA 95814
(916) 210-7341